Argued November 6, 1973, affirmed in part; reversed in part; remanded October 24, petition for rehearing of appellant and respondent denied November 26, 1974

## HARTFORD FIRE INSURANCE COMPANY, *Appellant, v.* AETNA INSURANCE COMPANY ET AL, *Respondents,* MT. HOOD RADIO & TELEVISION BROADCASTING CORP., *Respondent, Cross-Appellant.*

527 P2d 406

*Bert E. Joachims* of Klosterman & Joachims, Portland, argued the cause and filed briefs for appellant.

*R. R. Bullivant,* Portland, argued the cause for respondents Aetna Insurance Company, American Star Insurance Company, Canadian Indemnity Company, Centennial Insurance Company, Federal Insurance Company, Hanover Insurance Company, and Zurich Insurance Company. With him on the brief were James L. Knoll and Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman.

*Thomas A. Davis,* Portland, argued the cause for respondent, cross-appellant, Mt. Hood Radio & Television Broadcasting Corp. With him on the brief were Benson & Arenz.

*Edward H. Warren,* Portland, argued the cause for respondents The Western Fire Insurance Company and Groninger & Co. On the brief were Hershiser, Mitchell & Warren.

McALLISTER, J.

This is a declaratory judgment proceeding instituted by Hartford Fire Insurance Company asking for a determination of the amounts which it and other insurance companies should contribute to a loss in the sum of $746,408.90 sustained on February 27, 1971 by the insured Mt. Hood Radio & Television Broadcasting

Corporation when its television tower collapsed. The defendant insurance companies include: Aetna Insurance Company, American Star Insurance Company, Canadian Indemnity Company, Centennial Insurance Company, Federal Insurance Company, Hanover Insurance Company, and Zurich Insurance Company, all hereinafter referred to as the Aetna group. Additional defendants are the Western Fire Insurance Company, the insured Mt. Hood Radio & Television Broadcasting Corporation and two general agencies, Groninger & Co. and Dooly & Co., Inc. Mt. Hood counterclaimed against Hartford and cross-complained against Western for interest and attorney fees.

■■ It will be helpful to first determine the nature of this proceeding which will, in turn, fix our scope of review. A declaratory judgment proceeding will be treated as either legal or equitable depending upon its nature. *May v. Chicago Insurance Co.,* 260 Or 285, 291-292, 409 P2d 150 (1971); *Mayer v. First National Bk. of Oregon,* 260 Or 119, 133, 489 P2d 385 (1971). However, we have uniformly held that declaratory judgment proceedings to determine coverage under insurance policies are legal in nature rather than equitable. *May v. Chicago Insurance Co.,* supra; *Transamerica Ins. v. Signal Ins.,* 261 Or 390, 393, 494 P2d 885 (1972); *Frontier Ins. v. Hartford Fire Ins.,* 262 Or 470, 478-479, 499 P2d 1302 (1972); *Oregon Auto Ins. Co. v. Watkins,* 264 Or 464, 467, 506 P2d 179 (1973); *Lee v. State Farm Auto Ins.,* 265 Or 1, 2, 507 P2d 6 (1973). As a result we are bound by the trial court's findings in such a proceeding if they are supported by any substantial evidence. *Falk v. Sul America Terrestres,* 255 Or 246, 248, 465 P2d 714 (1970); *May v. Chicago Insurance,* supra.

■ Our conclusion as to the nature of this action is reinforced by the fact that the present proceeding is in major part an action for contribution. This court has consistently classified such actions as legal rather than equitable. In *Case v. McKinnis*, 107 Or 223, 256, 213 P 422 (1923) the court said:

> "The plaintiff relies upon the doctrine of contribution. This doctrine is founded upon principles of equity and natural justice and in reality is not based upon contract. It had its origin in courts of equity. Equality was deemed to be equity; and so when one was compelled to pay the whole of a debt which two or more owed either jointly or severally or jointly and severally equity equalized the burden by compelling the other obligors to pay their respective shares and thus divide the burden. While the doctrine of contribution originated in courts of equity it was subsequently adopted by courts of law and is now universally applied in such courts. * * *"

Later cases which have recognized that an action for contribution is legal rather than equitable include the following: *Carolina Casualty v. Oregon Auto.*, 242 Or 407, 418, 408 P2d 198 (1966); *Liberty Mut. Ins. v. Truck Ins.*, 245 Or 30, 32, 420 P2d 66 (1966); *Burnett v. Western Pac. Ins. Co.*, 255 Or 547, 560, 469 P2d 602 (1970).

For some time prior to February 1971 Mt. Hood had insured its property, including television towers, under an inland marine all risk insurance policy. Coverage was placed through its agent Dooly & Co. with a number of companies and each insurer agreed with the insured that the amount of its policy represented a pro rata portion of the total risk assumed by all the companies.

Early in 1971 a re-appraisal was made of Mt.

Hood's properties and based thereon it was decided to increase the total insurance coverage from $2,674,-199 to $3,263,300. It is agreed that Dooly & Co. was authorized to obtain the additional coverage. As some of the policies were to expire in February 1971, it was essential that the agent either increase the limits of the companies already sharing the risk or obtain additional coverage with other insurers.

Plaintiff Hartford was one of the companies insuring Mt. Hood and its policy was in the sum of $495,254 and was to expire on February 10, 1971. Mrs. Candee, an employe of Dooly & Co., was in charge of obtaining the additional coverage for Mt. Hood. On February 4, 1971, she called a Mr. Lady of Hartford regarding the renewal of the Hartford policy and an increase in the coverage. Mr. Lady informed Mrs. Candee that instead of increasing its coverage, Hartford did not want to renew its policy on the Mt. Hood risk. However, because Hartford had delayed so long in notifying Dooly that it would not renew its policy, Mr. Lady agreed that Hartford would extend the coverage of its policy until March 4, 1971.

This agreement to extend its policy was evidenced by a binder written by Mrs. Candee dated February 4th. The binder, or covering note, bound Hartford to cover Mt. Hood for $495,254, effective from February 10, 1971, to March 4, 1971, and was signed by Dooly & Co., Inc., as an authorized agent for Hartford. A copy of the binder was mailed to Hartford.

Although Mrs. Candee had urged Hartford to renew its policy and had some hope that it would do so, she sought to obtain replacement policies. On February 18, 1971 Mrs. Candee solicited the Groninger

Agency for coverage on the Mt. Hood risk. On that date Groninger agreed that it would bind one of its companies, the Western Fire Insurance Company, for coverage equal to the Hartford policy. Pursuant to that agreement Mrs. Candee issued a binder obligating Western Fire Insurance Company to cover the Mt. Hood properties for the sum of $495,254 during the period from February 18, 1971 to March 18, 1971. This binder was also signed by Dooly & Co., Inc., and a copy of it was mailed to Groninger & Co.

However, on February 26, 1971, one day before the loss, Groninger notified Dooly that Western was willing to write only $300,000 of the risk. In response to that notice Mrs. Candee on February 26th issued a replacement binder obligating Western to insure Mt. Hood for the sum of $300,000 from February 26, 1971 to March 26, 1971 and delivered a copy to Groninger & Co.

The trial court found that at the time of the loss the insurance covering the Mt. Hood properties was in the total sum of $3,563,300. Each insurer was held liable for its proportionate share of the loss determined by the amount which its policy limit bore to the sum of all policy limits determined to be in effect.

Although the facts are complicated the basic issue in this case is the extent of Hartford's coverage when the loss occurred. Hartford contends that the extension of its policy to March 4, 1971 was conditional and its coverage subject to reduction as Dooly obtained replacement coverage. In its brief Hartford states that its assignments of error raise the question of whether the Hartford binder was cancelled as a matter of law by substitution of replacement coverage. The

insured, Mt. Hood, and its agent, Dooly contend that the policy extension by Hartford was unconditional and not subject to fluctuation as temporary coverage was obtained in other companies.

The nature of the agreement between Hartford and its insured Mt. Hood as negotiated by its agent Dooly was a question of fact. On this issue the trial court found, inter alia:

"4. On February 4, 1971, Dooly contacted Hartford about renewing its policy. After discussions regarding Hartford's desire not to renew, Hartford agreed to extend its coverage until March 4, 1971. That extension is evidenced by written extension agreement dated February 4, 1971. After the loss, Hartford subsequently extended its coverage again until March 9, 1971.

"5. The February 4th extension agreement provided for an unconditional extension until March 4, 1971. There was no provision in that extension agreement regarding the cancellation and substitution of the Hartford policy after other coverage was obtained. There was no agreement between Dooly and Hartford that the Hartford policy would be cancelled upon obtaining additional insurance. Nor did Dooly subsequently agree to cancel all or a part of the Hartford policy when binders were obtained in other companies. Neither Dooly nor Hartford performed any written or verbal acts showing any cancellation of Hartford coverage or substitution for it by other insurance."

It is unnecessary to encumber the record with all of the evidence supporting the findings of the trial court, but we will mention a few of the more pertinent details. (1) The binder itself was unconditional and did not provide for any reduction if Dooly obtained temporary insurance from other companies. (2) Hartford did not at any time ask Dooly about the status of

its binder or the amount of its liability thereunder. (3) After the loss had occurred Hartford again extended its coverage from March 5th until March 9th for the full amount of $495,234. (4) Mrs. Candee testified that her agreement with Mr. Lady of Hartford was for an unconditional extension of the Hartford policy from February 19th to March 4th and that there was no discussion of any limitations on the binder. (5) Hartford offered no testimony tending to prove that its binder was conditional although Mr. Lady, who had negotiated the binder on behalf of Hartford, was available, but was not called as a witness.

■■ We agree with the trial court that a binder such as those involved in this case could be cancelled or reduced by an agreement between the insurer and the insured acting in person or by his authorized agent. The trial court found that Western's original binder of $495,234 was reduced to $300,000 by agreement between Western as represented by Groninger & Co. and Mt. Hood as represented by Dooly and a new binder for $300,000 substituted. The trial court found, however, that neither Mt. Hood nor Dooly, as its agent, at any time agreed to a reduction on Hartford's binder. As pointed out above, Hartford contends that its binder was cancelled as a matter of law by the substitution of replacement coverage. We believe, on the contrary, that there was no substitution either as a matter of law or by operation of law, but that substitution depended on agreement of the parties and the trial court found that there was no agreement to replace or reduce Hartford's binder. We are aware that the trial court's holding that both Hartford and Western were liable on the Mt. Hood risk in the amount heretofore specified yields the result that coverage

existed at the time of the loss in the amount of $3,563,-300 on property valued at $3,263,300. However, the mere fact that a loss fortuitously occurred during this period of excess coverage does not compel us to find that such coverage did not exist. Since the principal issue was factual and was decided by the trier of fact and since the finding is supported by substantial evidence it is binding on us. We, therefore, affirm that portion of the judgment apportioning the loss among the insurers.

■■ We turn to the cross appeal by Mt. Hood for attorney fees and interest. It is true that in this case Mt. Hood received under a loan receipt agreement the full amount of its loss within six months from the date it filed its proof of loss, but the loan receipt agreement contained a comprehensive provision reserving to the insurers the right to litigate their liability, both as to the assured and as between themselves. It read as follows:

"(c) Insured and the insurers agree:

"(1) The loans and advances provided for in (a) above, as well as any further loans or advances by any insurer, after the final adjustment of insured's loss, shall not prejudice the assertions and positions of the various insurers as previously set forth, and, in any subsequent proceeding, in court or otherwise, pertaining to the responsibility of each insurer to contribute to the total insured's loss, or to other insurers, the making of such loans and advances in any amount, whether above or below the proportion or amount claimed by any insurer, shall not prejudice the contribution claims, or defenses thereto, of any insurer, or any other claims, positions, defenses or rights it may have or assert."

Pursuant to that provision Hartford took the initiative and filed a declaratory judgment proceeding. Its major claim for relief was for a judgment that the binder issued by Hartford on February 4, 1971 was terminated by the issuance of the binder on Western for the same amount. If Mt. Hood had not appeared and successfully met that issue Hartford might have been relieved of all liability under its binder. Secondarily the proceeding was an action for contribution between all the carriers which depended on the amount of insurance which both Hartford and Western had in effect at the time of the loss under their respective binders. In its answer to the Hartford's complaint Western denied that "there was an outstanding insurance contract between Mt. Hood and Western at the time of the loss". All of these issues were of vital concern to Mt. Hood. Mt. Hood was forced to appear in the declaratory judgment proceeding to establish the liability of both Hartford and Western under the binders and to establish its right to interest and attorney fees on the amounts due to it by both Hartford and Western. Since Mt. Hood did appear and establish that Hartford's binder of February 4, 1971 was in full force and effect and that Western's binder was in full force and effect to the extent of $300,000 it should be entitled to attorney fees for establishing its claims against both Hartford and Western. The right to attorney fees is not defeated by juxtaposition of the parties. If Hartford and Western had merely refused to pay and Mt. Hood had sued and recovered on the Hartford and Western binders it would clearly have been entitled to attorney fees under ORS 743.114. The liability for attorney fees cannot be avoided merely because the litigation was cast in the form of a declaratory judgment

proceeding. *Hardware Mutual Cas. Co. v. Farmers Insurance Exch.,* 256 Or 599, 611, 474 P2d 316 (1970).

Mt. Hood seeks interest from Hartford and Western on the amount due from them from the time specified in each of their respective policies until Mt. Hood was paid in full pursuant to a loan receipt agreement. We think the lower court erred in denying this claim.

■■■■ Hartford and Western concede that Mt. Hood sustained a casualty loss in the amount of $746,408.90. In so doing they concede, in effect, that the sum due Mt. Hood was ascertainable as of December 6, 1971, the date on which Mt. Hood filed its proof of loss. The date the payments were due was established by the provisions of the policy of each insurer. In the case of Hartford, its policy provided for payment within 30 days and Western's policy provided for payment within 60 days from the filing of the proof of loss. We think the trial court erred in denying Mt. Hood interest on the sums due from Hartford and Western from the date provided in their policies until Mt. Hood was paid the full amount of its loss under the loan receipt agreement. The trial court seems to have denied interest on the mistaken belief that the insured was fully compensated within six months from the filing of the proof of loss. The six month statutory period applies to the recovery of attorney fees, but that statute is not applicable to interest. Interest is payable on all moneys immediately after they become due. ORS 82.010(1)(a).

The judgment of the trial court is affirmed in part and reversed in part and remanded for further proceedings not inconsistent herewith, including the entry of a judgment for interest and attorney fees as herein provided.