Argued and submitted May 6, 2009, reversed on appeal; cross-appeal dismissed as moot May 5, petition for review allowed October 21, 2010 (349 Or 173)

John STUART,
*Plaintiff-Respondent*
*Cross-Appellant,*

*v.*

Ronald PITTMAN,
an individual,
*Defendant,*

*and*

COUNTRY MUTUAL INSURANCE COMPANY,
dba Country Insurance and Financial Services, Inc.,
an Indiana corporation,
*Defendant-Appellant*
*Cross-Respondent.*

Yamhill County Circuit Court
CV050384; A134858

230 P3d 958

Beth Cupani argued the cause for appellant - cross-respondent. With her on the briefs were John A. Bennett, Lisa E. Lear, and Bullivant Houser Bailey PC.

Susan D. Marmaduke argued the cause for respondent - cross-appellant. On the briefs were Sharon A. Rudnick, Arden J. Olson, Nicole R. Commissiong, Jona J. Maukonen, and Harrang Long Gary Rudnick P.C.

Before Schuman, Presiding Judge, and Ortega, Judge, and Sercombe, Judge.

ORTEGA, J.

## ORTEGA, J.

Defendant Country Mutual Insurance Company appeals a judgment for plaintiff after a jury verdict in this action for breach of an oral insurance binder, raising eight assignments of error. Plaintiff cross-appeals, contending that the trial court erred in disallowing expert witness costs. Because they are dispositive, we write only to address defendant's fifth and sixth assignments of error, in which defendant contends that the trial court erred in denying its motion for a directed verdict and in submitting plaintiff's claims to the jury. We agree that the trial court erred and reverse on those grounds, and therefore do not address the other assignments of error on appeal or plaintiff's contention on cross-appeal.

■ In reviewing the trial court's directed verdict ruling, we state the facts, and all reasonable inferences that may be drawn from them, in the light most favorable to plaintiff. *Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984). We will uphold the jury's verdict if there is any evidence in the record to support it. Or Const, Art VII (Amended), § 3.

Plaintiff bought a small family farm and improvements in Yamhill County with a plan to have a new house built. In the meantime, he and his family lived in the existing house on the property. In March 2003, plaintiff met for the first time with defendant Ronald Pittman,[1] an agent for defendant, who had insured the property for the former owners. The two discussed insurance coverage for the property, its existing structures, and the house that plaintiff was planning to build. Plaintiff told Pittman that he was interested in "course of construction" coverage for the new house that would roll over into homeowners' insurance when the house was finished.[2] Pittman agreed that defendant could provide

---

[1] Plaintiff also asserted a claim against Pittman, which was dismissed on summary judgment. Pittman is not a party to this appeal. References in this opinion to "defendant" are to Country Mutual Insurance Company.

[2] During the trial, the parties and witnesses used the terms "course of construction" and "builder's risk" interchangeably, and, on appeal, the parties agree that the terms are synonymous and refer to coverage for a building during construction.

that type of coverage. At the time, construction had not yet begun on the new house, so it could not yet be insured. Defendant issued an AgriPlus policy to plaintiff—that is, an "all risk" policy that provided both liability and property coverage for risk of "direct physical loss"—covering the farm property and existing improvements.

Plaintiff's contract with his builder required the builder to purchase liability insurance and plaintiff to purchase liability and property protection for the house during construction. Plaintiff and Pittman met again in person in August 2003 to finalize insurance coverage for the new house before the construction began.

It is undisputed that, during that meeting, Pittman orally bound coverage, effective September 1, 2003, for the house that plaintiff planned to build. The coverage was to remain in effect during construction and would protect the construction up to the full value of the house. Construction began on September 10, 2003.

Although Pittman orally bound coverage effective September 1, 2003, plaintiff did not receive written documentation of his coverage for the new construction until March 2004, when he received a declaration page showing that coverage for a dwelling under construction had been added to his existing AgriPlus policy. Plaintiff was confused, as he had been expecting a new separate policy for the course of construction coverage. Pittman told plaintiff that the declaration page was a modification of his existing policy and provided the coverage for the new construction that Pittman and plaintiff had previously discussed.

In the meantime, in January 2004, the area suffered a severe snow and ice storm. The house under construction was framed but not enclosed, and snow and ice built up inside of it, causing the interior sheathing to split, the accumulation of water in the crawl space, and a large amount of mold. Plaintiff notified defendant of the damage. He sued the builder for faulty workmanship and obtained a judgment in the amount of $364,101.49; however, because the builder was insolvent, plaintiff was unable to collect on that judgment.

Plaintiff filed a claim under the policy. Defendant denied coverage, on the grounds that there had been no "direct physical loss," as required by the policy, and that the policy excluded coverage for plaintiff's loss, which had been caused by faulty work, water, and mold.

Plaintiff filed this breach of contract action against Pittman and defendant to enforce the terms of the oral binder. Pittman prevailed on a motion for summary judgment and was dismissed from the case. In plaintiff's second amended complaint, he alleged that defendant breached the oral binder by (1) failing to put in place the insurance bound by Pittman; (2) failing to provide coverage pursuant to Pittman's oral binder; and (3) failing to mail or otherwise deliver a copy of the policy to plaintiff within a reasonable period of time after its issuance, in violation of ORS 742.043(2) and ORS 742.046. Plaintiff also sought attorney fees under ORS 742.061.

Plaintiff's claim against defendant went to trial. Plaintiff testified that he went to Pittman to discuss all of his insurance needs and that, with respect to the new house, he was interested in and asked for "course of construction" coverage, although he did not know specifically what that was. He had told Pittman that he wanted insurance that would provide a "safety net" or "catch basin" of coverage, "in all instances that something goes wrong during construction." According to plaintiff, he and Pittman did not "go through the bullet points of a policy discussion," but he told Pittman that the policy he was seeking would cover

> "anything that goes through the cracks, that means the guy doesn't pay a subcontractor, there is faulty work involved, somebody is injured * * *, the tools are stolen, anything for which I might be deemed to be liable in some form or fashion and anything that the contractor's coverage did not specify or provide benefit for."

Plaintiff testified that, although he did not recall specifically asking for protection for the builder's failure to perform, he believed that Pittman understood that he was seeking such coverage and agreed that defendant could provide it. According to plaintiff, Pittman did not advise him of any exclusions from coverage.

Pittman testified that, in his meetings with plaintiff, they discussed multiple insurance issues. Pittman explained that the "course of construction" coverage sold to plaintiff was added to plaintiff's existing policy, that it was an upgraded, "all risk" type of property insurance that did not depend on fault, and that it covered property damage caused by accidents, except for excluded perils. Pittman remembered talking with plaintiff about the concept of fault and primary and secondary liability in the context of liability coverage. He testified that he never understood plaintiff to request coverage for faulty work of the builder and that that is not a type of coverage that defendant provides.

Plaintiff's insurance expert, Underdown, testified that "course of construction" insurance is a type of property and casualty (*i.e.*, liability) insurance that people purchase to cover a building during construction. According to Underdown, "direct physical loss" is typically a prerequisite to coverage in a course of construction policy, and insurers generally will not waive that requirement. He also testified that a typical course of construction policy includes exclusions for faulty work, mold, and water, but that it is possible to "buy back" coverage for mold.

At the close of the evidence, defendant moved for a directed verdict pursuant to ORCP 60, asserting that plaintiff had failed to establish that Pittman's oral binder provided coverage for plaintiff's loss in excess of the coverage provided by the written policy. The trial court denied the motion and the case went to the jury. In a special verdict, the jury found that the oral binder differed from the written policy issued by defendant in that it eliminated (1) the requirement of direct physical loss; (2) the exclusion for damage by mold; (3) the exclusion for damage by water that backs up through drains; (4) the exclusion for damage by water other than water that backs up through drains; and (5) the exclusion for damage by faulty work. The jury found that defendant had breached the oral binder and that plaintiff had suffered damages of $268,417.

On appeal, defendant raises multiple assignments of error. The first four relate to the standard of proof described in the jury instructions and assert that the trial court erred in

instructing the jury that plaintiff was required to establish the terms of the oral binder by a preponderance of the evidence rather than by clear and convincing evidence. Defendant's fifth assignment challenges the trial court's denial of its motion for a directed verdict on the allegation that Pittman orally bound coverage different from the policy that defendant issued. Defendant's sixth and seventh assignments concern whether the failure to deliver the written policy is a breach of the agreement and, if so, whether there is evidence to support plaintiff's claim of damages. Its eighth assignment challenges the award of attorney fees. Because we agree with the arguments in defendant's fifth and sixth assignments of error that the claim should not have gone to the jury at all, we reverse the judgment on that ground and do not reach the other assignments of error on appeal or plaintiff's assignment on cross-appeal seeking expert witness fees and expenses.

As previously noted, this case involves an action for breach of an oral contract of insurance—an oral binder. A "binder" is a contract for temporary insurance, effective until permanent insurance is approved or disapproved. *United Pac. Ins. v. Truck Ins. Exch.*, 273 Or 283, 289-90, 541 P2d 448 (1975); *see also Black's Law Dictionary* 190 (9th ed 2009) (defining "binder" as "[a]n insurer's memorandum giving the insured temporary coverage while the application for an insurance policy is being processed or while the formal policy is being prepared"). To be enforceable, a binder need not contain all the necessary elements of an insurance contract, so long as the protection for which the parties contracted can be determined. *United Pac. Ins.*, 273 Or at 290. The binder need not express any consideration or state the premium, because the agreement, express or implied, to pay the regular insurance premium is sufficient consideration. *Id.*

In Oregon, an oral binder for insurance is enforceable under ORS 742.043(1), which provides:

"Binders or other contracts for temporary insurance may be made orally or in writing, and shall be deemed to include all the usual terms of the policy as to which the binder was given together with such applicable indorsements as are designated in the binder, except as superseded by the clear and express terms of the binder."

As reflected in the statute, there is a presumption that a binder includes those terms that are usually contained in the policy for which the binder was issued. *Bank of California v. Livingston*, 65 Or App 743, 746 n 2, 672 P2d 386 (1983); *see also Cleveland Oil Co. v. Norwich Ins. Society*, 34 Or 228, 236, 55 P 435 (1898). It is undisputed on appeal that the "usual terms" of "course of construction" coverage either exclude or do not provide coverage for the risks that resulted in plaintiff's loss. On appeal, defendant contends that the trial court erred in submitting plaintiff's claim to the jury, because there was no evidence from which the jury could find that Pittman orally bound coverage different from the "usual" course of construction coverage. In the alternative, defendant contends that the coverage for faulty work that plaintiff claims Pittman bound is in the nature of a performance bond that only the builder could have provided and is not available through insurance; accordingly, defendant asserts, there are no "usual terms" for such a policy. Because we agree with defendant's first argument, we do not reach the second one.

In reviewing the trial court's ruling denying defendant's motion for a directed verdict, the question is whether there is any evidence in the record to support the jury's verdict. *Brown*, 297 Or at 705. We will not set aside the verdict unless we can affirmatively say that there is no evidence from which the jury could find that the usual terms and exclusions of a course of construction policy were superseded by the "clear and express terms of the binder," so as to provide coverage for plaintiff's loss.

We pause for a moment to consider what is meant by "clear and express." The term "clear" is defined in *Webster's Third New Int'l Dictionary* 419 (unabridged ed 2002) as "easily understood : without obscurity or ambiguity * * * easy to perceive or determine with certainty." *Black's* defines the term "clear" as "free from doubt; sure * * * [u]nambiguous." *Black's* at 287. The term "express" is defined in *Webster's* as "directly and distinctly stated or expressed rather than implied or left to inference : not dubious or ambiguous : DEFINITE, CLEAR, EXPLICIT, UNMISTAKEABLE." *Webster's* at 803. *Black's* defines the term "express" as "clearly and unmistakably communicated; directly stated." *Black's* at 661. Thus, a plaintiff who seeks to establish under ORS

742.043(1) that "clear and express" terms of an oral binder supersede the usual terms of the policy meets that burden by showing binder terms that are definite, explicit, and unambiguous.

Plaintiff contends that there is evidence from which the jury could find, as it did in its special verdict, that Pittman bound coverage by clear and express terms that (1) eliminated the requirement of direct physical loss; (2) eliminated the exclusion for damage by mold; (3) eliminated the exclusion for damage by water that backs up through drains; (4) eliminated the exclusion for damage by water other than water that backs up through drains; and (5) eliminated the exclusion for damage by faulty workmanship. Plaintiff contends, in essence, that there is evidence from which the jury could find terms that were "clear and express" insuring plaintiff against losses that are excluded from the usual course of construction coverage and, further, that are not generally insured.

We have reviewed the record carefully and have read all of the testimony. Viewing it in the light most favorable to plaintiff, we nevertheless conclude that there is no evidence that the parties agreed to or that Pittman bound terms that clearly and expressly waived or superseded the usual terms or exclusions of course of construction coverage. Assuming, as we must, that, in their conversations about different types of insurance, Pittman agreed to provide plaintiff with a "safety net" of coverage "in all instances that something goes wrong" and that he even agreed that defendant could provide some type of coverage in the event of "faulty work," that evidence is simply too vague and obscure to satisfy the requirement of ORS 742.043(1) for the terms that are "clear and express"—*i.e.*, that definitely, explicitly, and unambiguously superseded the terms of the course of construction coverage. As noted, defendant's course of construction coverage provided both liability and property coverage. In their two face-to-face conversations, Pittman and plaintiff discussed both liability and property coverage; plaintiff's testimony relating those conversations and the types of losses for which he sought insurance did not distinguish between liability and property coverage. In short, the testimony is ambiguous and does not provide evidence of terms that

clearly and expressly modified or waived the terms of the "usual" course of construction policy or its exclusions from property coverage for faulty work, water damage, and mold.

Plaintiff contends that, because Pittman never explained the policy's exclusions to him, he had no reason to believe that any risks were excluded and that the jury accordingly could infer that all risks were bound. The difficulty with plaintiff's reasoning is that ORS 742.043(1) imposes a presumption that the usual terms of a course of construction policy apply, including the usual exclusions; it is plaintiff's burden to show that those usual exclusions have been explicitly superseded. The statute requires more than evidence from which an inference can be drawn; it requires evidence of terms that are "clear and express." Any inference that arguably could be drawn from Pittman's failure to describe the exclusions from coverage does not satisfy the statute's requirement for terms that clearly and expressly supersede them. *See Webster's* at 803 (defining "express" as "directly and distinctly stated or expressed rather than implied or left to inference"). Thus, we conclude that the trial court erred in submitting to the jury the allegation that Pittman orally bound coverage different from the policy that defendant issued.

Finally, defendant contends in its sixth assignment of error that the trial court erred in allowing the jury to consider plaintiff's allegation that a failure to timely deliver or mail a copy of the policy to plaintiff constituted a breach of the implied covenant of good faith and fair dealing. The jury found that defendant breached the contract by failing to mail a copy to plaintiff and that the failure to deliver the policy to plaintiff within a reasonable time was a cause of plaintiff's damages. Defendant asserts that the trial court committed legal error in allowing the jury to consider the allegation of breach of the implied covenant of good faith and fair dealing, because the delivery or mailing of the policy is not a term of the contract and therefore cannot be a basis of a claim for breach of contract. Defendant further contends that, assuming that a failure to deliver a policy can form the basis for a breach of contract claim, plaintiff failed to submit any evidence that he was damaged because of a failure on defendant's part to timely deliver the policy. Because we agree

with defendant's second contention, we do not address whether the failure to deliver the policy could constitute a breach of the implied covenant of good faith and fair dealing.

 In a breach of contract claim, a plaintiff may recover damages that are caused by the breach and that are foreseeable and not speculative. *Wilcher v. AmeriTitle, Inc.*, 212 Or App 498, 506, 157 P3d 790, *rev den*, 343 Or 366 (2007); *see also Dynagraphics, Inc. v. U.S. National Bank of Oregon*, 100 Or App 108, 112-13, 785 P2d 760 (1990) (damages must be caused in fact by breach and must be foreseeable, that is, either arise naturally from the breach or have been within the contemplation of the parties at the time they made the contract); *Bixler v. First National Bank*, 49 Or App 195, 202, 619 P2d 895 (1980) ("[D]amages must be established by evidence upon which their existence and amount may be determined with reasonable certainty.").

In order to establish his damages, plaintiff was required to present evidence from which it could be found that defendant's failure to deliver the policy in a timely manner was the cause of his damages. Plaintiff contended that, had he received the policy within a reasonable time after its issuance,[3] he would have read it and discovered that it did not cover losses due to mold or faulty construction and would have obtained that protection elsewhere. Plaintiff offered no evidence, however, from which the jury could find that such coverage would, in fact, have been available to plaintiff in December 2003, after construction was already underway. Underdown, plaintiff's expert, testified that he was aware of one insurance company that, in the fall of 2003, offered a product that covered loss due to mold. However, Underdown did not testify that, in December 2003, after construction of the home had begun, plaintiff could have obtained a policy covering loss for mold. As for faulty construction, defendant's expert, Wilson, testified that an owner is ordinarily entitled to request that a contractor provide a performance bond that

---

[3] We note that, under ORS 742.043(2), defendant had 90 days from the date of the oral binder, or until November 30, to issue a policy. ORS 742.046 requires that a policy be mailed or delivered to the insured "within a reasonable period of time after its issuance."

is bigger than the performance bond required by Oregon law.[4] However, there was no evidence that, in December 2003, after the commencement of construction, plaintiff could have obtained a performance bond that would have covered his loss. Thus, we conclude that there was no evidence from which the jury could find that, had defendant timely delivered the policy after its issuance, plaintiff could have obtained the coverage that he sought.

In light of our conclusion that there is no evidence from which the jury could find that defendant's agent bound terms that clearly and expressly superseded the usual terms of a course of construction policy or that plaintiff was damaged as a result of defendant's failure to timely deliver the policy, we conclude that the trial court erred in submitting plaintiff's claims to the jury. We therefore reverse the judgment for plaintiff and do not address the remaining assignments of error on defendant's appeal and plaintiff's cross-appeal.

Reversed on appeal; cross-appeal dismissed as moot.

---

[4] "Q. [By defendant's counsel:] [I]f a contractor is engaged on a bigger project and the owner wants them to have a performance bond, they can get a specific bond for that project?

"A. Yes. They are always written for a specific project because they are tied to the contract that is pertinent to that project."