Argued and submitted March 3, at the Willamette University College of Law, Salem, Oregon, decision of Court of Appeals reversed; judgment of circuit court affirmed June 3, 2011

John STUART,
*Petitioner on Review,*

*v.*

Ronald PITTMAN,
an individual,
*Defendant,*
*and*

COUNTRY MUTUAL INSURANCE COMPANY,
dba Country Insurance and Financial Services, Inc.,
an Indiana corporation,
*Respondent on Review.*

(CC CV050384; CA A134858; SC S058536)

255 P3d 482

William F. Gary, Harrang Long Gary Rudnick, P.C., Portland, argued the cause for petitioner on review. With him on the brief were Jona J. Maukonen and Arden J. Olson.

R. Daniel Lindahl, Lindahl Law Firm, Portland, argued the cause for respondent on review. With him on the brief was John A. Bennett, Bullivant Houser Bailey, PC, Portland.

Cody Hoesly, Larkins Vacura LLP, Portland, filed briefs on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Before, De Muniz, Chief Justice, and Durham, Balmer, Kistler, Walters, and Linder, Justices.**

DE MUNIZ, C. J.

---

** Landau, J., did not participate in the consideration or decision of this case.

## DE MUNIZ, C. J.

Plaintiff entered into an oral course-of-construction insurance binder[1] with Country Mutual Insurance Company (defendant) through its agent, Ronald Pittman. Before receiving the written policy, plaintiff's partially built home was damaged by inclement weather. After defendant denied plaintiff's insurance claim, citing exclusions in the written policy, plaintiff filed an action against defendant. At trial, defendant moved for a directed verdict on plaintiff's breach of contract claim. The trial court denied defendant's motion and a jury found for plaintiff. The trial court subsequently awarded plaintiff his attorney fees and costs.

On appeal, the Court of Appeals, relying on ORS 742.043(1),[2] concluded that the trial court had erred in submitting the case to the jury, reasoning that there was no evidence from which a jury could have found that Pittman had agreed to definite, explicit, and unambiguous terms that superseded the usual policy terms. *Stuart v. Pittman*, 235 Or App 196, 230 P3d 958 (2010). We allowed plaintiff's petition for review to determine whether there was sufficient evidence from which the jury could have found for plaintiff and, if so, whether plaintiff was entitled to an award of attorney fees under ORS 742.061. For the reasons that follow, we reverse the decision of the Court of Appeals and affirm the trial court's judgment.

Because the jury returned a verdict in plaintiff's favor, we state the facts in the light most favorable to the plaintiff. *See Jensen v. Medley*, 336 Or 222, 226, 82 P3d 149 (2003) (facts stated in light most favorable to plaintiff, because plaintiff was prevailing party before jury). Plaintiff decided to build a new house on a small farm in Yamhill County. In March 2003, plaintiff met with Pittman, defendant's agent, and told him that he wanted course-of-construction insurance to cover the house while it was being built. Plaintiff was unfamiliar with the form and content of

---

[1]  "A binder ordinarily evidences a contract for temporary insurance until such time as issuance of permanent insurance is approved or disapproved or some other temporary impediment is removed."

*United Pac. Ins. v. Truck Ins. Exch.*, 273 Or 283, 289-90, 541 P2d 448 (1975).

[2] We set out the text of the relevant statutes later in this opinion.

traditional course-of-construction policies. However, Pittman had been an insurance agent for 19 years and was well experienced with such policies. During their meeting, plaintiff and Pittman discussed, at length, the scope of coverage that the policy would provide—coverage from the start of construction to its finish and coverage beyond what normally would be covered in a homeowner's policy. Plaintiff told Pittman that he wanted coverage that would provide "safety net," or "catch basin" coverage "in all instances that something goes wrong during construction." Plaintiff wanted coverage that would include loss resulting from weather, injury, faulty work, and the builder's failure to perform. Pittman agreed to provide coverage and did not communicate to plaintiff any coverage limitations. Relying on Pittman's oral assurance of coverage, plaintiff did not require the builder to carry a performance bond or liability insurance, which plaintiff could have required of the builder under the provisions of the construction contract.

In August 2003, plaintiff met with Pittman and notified him that he had signed a construction contract and that course-of-construction insurance needed to be in effect at the beginning of September 2003. Pittman agreed to provide course-of-construction insurance effective September 1, 2003. The builder started construction later that month. In October 2003, plaintiff notified Pittman that he had not received the written policy and Pittman told plaintiff that he would receive the policy soon. By December 2003, however, plaintiff had received only a premium statement from defendant.

An ice storm struck the Willamette Valley in January 2004. Because the builder had left the partially completed house open to the weather, snow, ice, and water accumulated inside the house. As a result the interior sheathing split, water accumulated in the crawl space, and mold grew.

Shortly thereafter, plaintiff contacted Pittman to inform him of the damage and to initiate an insurance claim. Pittman told plaintiff that damage caused by wind, rain, flood, and water would be covered and that mold damage also might be covered. Plaintiff still had not received his written policy. In March 2004, plaintiff received a declaration page

from defendant showing that coverage for a "dwelling under construction" had been added to plaintiff's existing policy. Pittman told plaintiff that the addition provided the coverage for the new construction previously discussed. However, the policy that defendant issued contained provisions requiring direct physical loss, as well as exclusions for the perils of faulty workmanship, mold, and damage caused by water backup from sewer drains. Defendant later denied plaintiff's insurance claim based on those exclusions.

Plaintiff brought an action against defendant for breach of the oral binder and, alternatively, for failing to deliver a copy of the written policy within a reasonable time. Plaintiff also sought attorney fees under ORS 742.061. At the conclusion of the trial's evidentiary phase, defendant moved for a directed verdict, arguing that plaintiff had failed to establish that the oral binder provided coverage beyond that expressed in the written policy and that plaintiff had failed to establish that he had been damaged by defendant's failure to deliver the policy in a timely manner. The trial court denied defendant's motion. A jury subsequently returned a verdict finding that Pittman had entered into an oral contract of insurance on behalf of defendant that eliminated both the requirement for direct physical loss and the exclusions for mold, water damage, and damage by faulty workmanship or construction and further finding that defendant had failed to deliver the written policy within a reasonable period of time. The jury awarded plaintiff damages in the amount of $268,417. The trial court entered a supplemental judgment awarding plaintiff attorney fees and costs.

On appeal, defendant raised multiple assignments of error. The Court of Appeals, however, reached only defendant's challenge to the trial court's denial of defendant's motion for directed verdict on plaintiff's contract claims under the oral binder and for defendant's failure to provide a written policy within a reasonable period of time. On the first issue, the Court of Appeals concluded that there was no evidence from which a jury could have found that Pittman agreed to terms that clearly and expressly waived or superseded the usual policy terms or exclusions. The court reasoned that, even assuming that Pittman agreed to provide "safety net" or "catch basin" coverage "in all instances that

something goes wrong during construction," those terms were too vague to satisfy ORS 742.043(1), which provides that an oral binder is deemed to include "all the usual terms of the policy * * * *except as superseded by the clear and express terms of the binder." Stuart*, 235 Or App at 204. As to plaintiff's claim that defendant had failed to provide a written policy within a reasonable time, the Court of Appeals concluded that there was no evidence from which a jury could have found that plaintiff had been damaged because defendant had failed to deliver the written policy in a reasonable time. Based on the foregoing, the Court of Appeals reversed the trial court's judgment.[3]

On review, plaintiff argues that the Court of Appeals incorrectly construed ORS 742.043(1) by requiring plaintiff to show that the usual exclusions of the written policy had been "definitely, explicitly, and unambiguously" superseded by the binder. Plaintiff further argues that the Court of Appeals erred in concluding that he had not proven that he was damaged by defendant's failure to timely deliver the written policy. For its part, defendant maintains that (1) the Court of Appeals correctly held that the "usual terms of the policy" are superseded only when the parties have agreed to "clear and express" terms—definite, express, and unambiguous —that are different from the usual policy terms; and (2) there was no evidence plaintiff was damaged by defendant's failure to timely deliver the policy. According to defendant, the trial court erred in denying its motion for directed verdict and in submitting the case to the jury. Defendant also argues that plaintiff is not entitled to attorney fees, because an oral binder is not a "written policy" as required by ORS 742.061.

At the outset, we observe that defendant concedes that Pittman entered into an oral binder for course-of-construction insurance covering plaintiff's new residence, and that the binder remained in place at all times relevant to this litigation.[4] Because the jury rendered a verdict in

---

[3] The Court of Appeals dismissed plaintiff's cross-appeal seeking expert witness fees and expenses on mootness grounds. On review, the parties do not raise that issue, and we express no opinion in that regard.

[4] This court has held that an enforceable oral binder is created when the parties have agreed to: (1) the property to be insured; (2) the risk to be insured against; (3) the amount of coverage; (4) the duration of coverage; and (5) the premium to be paid. *Cleveland Oil Co. v. Ins. Society*, 34 Or 228, 234, 55 P 435 (1898).

plaintiff's favor, "we do not weigh the evidence; we consider the evidence, including inferences, in the light most favorable to plaintiff." *Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984). A jury verdict can be set aside only if this court concludes that there was no evidence from which the jury could have found for the plaintiff. *Id.* Furthermore, this court reviews a trial court's denial of a motion for directed verdict for any evidence to support the verdict in plaintiff's favor. *Woodbury v. CH2M Hill, Inc.*, 335 Or 154, 159, 61 P3d 918 (2003) (describing standard). The answer to the parties' contentions regarding the trial court's denial of defendant's directed verdict motion turns on the proper interpretation of ORS 742.043(1).

ORS 742.043 provides, in part:

"(1)   Binders or other contracts for temporary insurance may be made orally or in writing, and shall be deemed to include all the usual terms of the policy as to which the binder was given together with such applicable indorsements as are designated in the binder, *except as superseded by the clear and express terms of the binder.*

"(2)   Except as provided in subsection (3) of this section and ORS 746.195, within 90 days after issue of a binder a policy shall be issued in lieu thereof, *including within its terms the identical insurance bound under the binder and the premium therefor.*"

(Emphasis added.) In interpreting a statute, our paramount goal is to discern the legislature's intent, and the statute's own words are the most persuasive evidence of that intent. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009). The text of ORS 742.043(1) provides that the binder "shall be deemed to include all the usual terms of the policy * * *,

---

Defendant argues that the trial court erred in failing to instruct the jury that plaintiff was required to prove the existence and the terms of an oral insurance binder by clear and convincing evidence. The Court of Appeals' disposition of the case did not require that it reach the issue. Because defendant conceded the existence of the oral binder, we need not address whether the trial court erred in failing to instruct the jury regarding the heightened standard of proof. The dispute before the jury concerned the terms of the binder. As to that issue, the trial court correctly instructed the jury on plaintiff's burden of proof. *See Dodd v. Home Mutual Insurance Co.*, 22 Or 3, 7, 28 P 881 (1892) (whether plaintiff sustained his allegations in oral insurance contract dispute examined under preponderance of the evidence standard).

*except as superseded by the clear and express terms of the binder*." That highlighted text modifies "all the usual terms of the policy" and makes the binder's clear and express terms controlling over those contained in the usual policy.[5] That reading of the statute also gives effect to the text in subsection (2), which provides that the written policy issued as a result must "include within its terms the identical terms bound under the binder." *See Sanders v. Oregon Pacific States Ins. Co.*, 314 Or 521, 527, 840 P2d 87 (1992) (provisions of statute must be read, where possible, as giving effect to all).

The question remains, however, what the legislature meant by the terms "clear and express." The Court of Appeals concluded that the terms "clear and express" meant that the oral binder terms must "definitely, explicitly, and unambiguously supersede the terms [in the written policy]." *Stuart*, 235 Or App at 204. The Court of Appeals assumed, because of the jury verdict in plaintiff's favor, that Pittman had agreed to

"provide plaintiff with a 'safety net' of coverage 'in all instances that something goes wrong' and that he even agreed that defendant could provide some type of coverage in the event of 'faulty work[.]' "

*Id.* Nevertheless, the Court of Appeals concluded that the terms "safety net" and coverage "in all instances that something goes wrong" were too vague and obscure to satisfy the "clear and express" requirements of ORS 742.043(1). *Id.* For the reasons that follow, we disagree.

Words of common usage, such as "clear" and "express," should be given their plain and ordinary meaning. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859

---

[5] Courts in other jurisdictions have addressed similar statutes providing that the clear and express terms of a binder control over the usual policy provisions. *See, e.g., Hilt Truck Lines, Inc. v. Riggins*, 756 F2d 676, 678-79 (8th Cir 1985) (applying an Arkansas statute identical to ORS 742.043(1) where agent made an oral binder of insurance covering "all risks" related to a shipping business, insurance company was required to provide coverage for shipping of liquor despite the fact that the written policy excluded liquor); *Int'l Indemnity Co. v. McKeever*, 331 SE2d 909, 910 (Ga App 1985) (interpreting an identical statute to ORS 742.043(1) "[i]f clear and express terms have been agreed upon, they must be considered as controlling over the usual policy provisions").

P2d 1143 (1993). We agree with the Court of Appeals that, as used in the statute, the term "clear" means "easily understood" and the term "express" means "directly and distinctly stated, rather than implied or left to inference." 235 Or App at 203. Those definitions lead to the unremarkable conclusion that the "clear and express" requirement in ORS 742.043(1) means that those binder terms that are *easily understood* and *expressed*, as opposed to implied, will ordinarily be sufficient to supersede the usual or contrary terms in a policy.

As noted above, there is evidence that plaintiff requested insurance that provided "catch basin" or "safety net" coverage in "all instances that something goes wrong during construction," in essence an "all risk" policy. Those words were expressed by plaintiff to Pittman, not implied, and the request for coverage "in all instances [where] something goes wrong during construction" is easily understood as meaning exactly what it says. Further, Pittman was aware that plaintiff wanted a policy that covered perils beyond those usually covered by a traditional homeowner's policy— the policy needed to cover loss resulting from weather, injury, faulty work, and builder's failure to perform. Pittman subsequently indicated that defendant's policy "covered those things." Pittman's promise, which contained no exception or qualifications, left no room for an exclusion for faulty work or water- or mold-caused damage. Moreover, after the damage to plaintiff's house, Pittman told plaintiff that damage caused by wind, rain, flood, water, and mold would likely be covered.

Contrary to the Court of Appeals, we conclude that the terms "safety net" or "catch basin" or coverage "in all instances that something goes wrong during construction" were not vague or obscure. Rather, those terms, in the context in which they were used, were easily understood and were not implied or left to inference, and thus were sufficient under the "clear and express" requirement in ORS 742.043(1). Accordingly, there was evidence in the record from which the jury reasonably could conclude that Pittman agreed to coverage that was different from that expressed in the written policy—eliminating the requirement for direct physical loss and the exclusions for mold, water damage, and

faulty workmanship or construction.[6] Under Article VII (Amended), section 3, of the Oregon Constitution, we are required to sustain the jury's verdict on plaintiff's claim. The Court of Appeals erred in reaching a contrary conclusion.[7]

Finally, we consider whether attorney fees were properly awarded by the trial court.[8] Here, plaintiff seeks attorney fees under ORS 742.061, which provides, in part:

---

[6] The jury was presented with an interrogatory verdict form that the jury answered as follows:

"1. Did Country Mutual's agent enter into an oral contract of insurance different than the policy later issued by Country Mutual?

"Yes   x  
"No     

"At least nine of you must agree to the answer. If your answer to this question is 'No', proceed to question 4. If your answer to this question is 'Yes', proceed to question 2.

"2. Did the oral contract of insurance:

"A. Eliminate the requirement of direct physical loss?

"Yes   x  
"No     

"B. Eliminate the exclusion for damage by mold?

"Yes   x  
"No     

"C. Eliminate the exclusion for damage by water which backs up through drains?

"Yes   x  
"No     

"D. Eliminate the exclusion for damage by water other than water which backs up through drains?

"Yes   x  
"No     

"E. Eliminate the exclusion of damage by faulty workmanship or construction?

"Yes   x  
"No     "

The jury found that defendant had entered into an oral binder that was different than the later issued policy by defendant. A finding for plaintiff on any one of the above specifications under question 2 was sufficient to support the verdict for plaintiff. *See Shoup v. Wal-Mart Stores, Inc.*, 335 Or 164, 61 P3d 928 (2003) (jury verdict sustained where at least one valid specification supported by evidence).

[7] Because we resolve this case by determining that there was sufficient evidence for a jury to find for plaintiff on the breach of oral binder claim, we do not decide whether a failure to deliver the written policy within a reasonable period of time also gave rise to a separate cause of action for damages.

[8] Although not reached by the Court of Appeals, we decide this question for the benefit of the bench and bar and to promote judicial efficiency. *See State v. Kuznetsov,*

"Except as otherwise provided in subsections (2) and (3) of this section, if settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any *policy of insurance* of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon."

(Emphasis added.) Defendant argues that ORS 742.061 does not apply to oral binders of insurance, because the statute uses the term "policy of insurance" and ORS 731.122 defines "policy" as:

"[T]he written contract or written agreement for or effecting insurance, by whatever name called, and includes all clauses, riders, indorsements and papers which are a part thereof and annuities."

Defendant asserts that, because an oral binder is not a written policy, the trial court should not have awarded plaintiff his attorney fees under ORS 742.061. We disagree.

ORS 742.043(2) provides that the policy issued will "include[ ] within its terms the identical insurance bound under the binder and the premium therefor[.]" The jury's findings that plaintiff and defendant entered into an enforceable oral binder of insurance means that, as a matter of law, the written policy of insurance issued by defendant is deemed to include all the terms of the oral binder.

This court has previously allowed attorney fees under the predecessor to ORS 742.061,[9] based on an agent's oral representation of a policy's term of coverage. In *Farley v. United Pacific Ins. Co.*, 269 Or 549, 525 P2d 1003 (1974), the defendant's agent entered into an oral binder of insurance in which the agent represented that a policy term covered the type of risk that subsequently caused plaintiff's damages. This court concluded in *Farley* that the insurer was estopped—by its agent's representation of coverage—from denying coverage based on the express terms of the policy.

---

345 Or 479, 486-87, 199 P3d 311 (2008) (when issue was introduced at the Court of Appeals and fully briefed on review, this court may address the argument for the benefit of bench and bar and to promote judicial efficiency).

[9] *Former* ORS 743.114, *renumbered* as ORS 742.061 (1989).

The court indicated that a "policy" for purposes of the attorney fee statute included agreements for temporary insurance:

> "Defendant's contention that attorney fees should not be allowed if an estoppel is the basis for plaintiff's recovery is not well taken. Because defendant is estopped to assert that the provisions of the policy differ from its agent's interpretation of those terms, [ ] the recovery [is] no less a recovery on an agreement to insure."

*Id.* at 563.

Moreover, our case law has long recognized that, where the insured is entitled to a recovery under an insurance binder, the insured is entitled to attorney fees under ORS 742.061. For example, in *Hartford v. Aetna/Mt. Hood Radio*, 270 Or 226, 527 P2d 406 (1974), two insurance companies (Hartford and Western) entered into insurance binders with the insured, Mt. Hood, to cover the loss of a television tower. The insurers argued that there was no enforceable binder of insurance and that no attorney fees should be allowed, because the case was brought as a declaratory judgment between the insurance companies. In concluding that the insured, Mt. Hood, was entitled to attorney fees, this court observed that:

> "If Hartford and Western had merely refused to pay and Mt. Hood had sued and recovered on the Hartford and Western binders it would clearly have been entitled to attorney fees under [ORS 742.061]."

*Id.* at 236.

Our case law establishes that a recovery under an enforceable insurance binder can support an award of attorney fees pursuant to ORS 742.061. The trial court did not err in awarding plaintiff his attorney fees.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.