Argued and submitted November 14, 2014; on appeal, general judgment reversed and remanded for retrial of damages, supplemental judgment reversed and remanded, on cross-appeal, affirmed October 26; on respondent-cross-appellant Big River Construction, Inc. and respondent Safeco Insurance Company of America's petition for reconsideration filed November 23, appellant-cross-respondent's opposition to petition for reconsideration filed December 14, and respondent-cross-appellant Big River Construction, Inc. and respondent Safeco Insurance Company of America's reply in support of petition for reconsideration filed December 28, 2016, reconsideration allowed by opinion February 15, 2017

See 283 Or App 668, ___ P3d ___ (2017)

BIG RIVER CONSTRUCTION, INC.,
an Oregon corporation,
dba Big River Excavating,
*Plaintiff-Respondent*
*Cross-Appellant,*

*v.*

CITY OF TILLAMOOK,
an Oregon public body,
*Defendant-Appellant*
*Cross-Respondent.*

CITY OF TILLAMOOK,
an Oregon public body,
*Third-Party Plaintiff-Appellant,*

*v.*

SAFECO INSURANCE COMPANY OF AMERICA,
a surety,
*Third-Party Defendant-Respondent.*

Tillamook County Circuit Court 102046;

CITY OF TILLAMOOK,
an Oregon public body,
*Plaintiff,*
*and*

FERGUSON ENTERPRISES, INC.,
a corporation of Virginia, foreign corporation,
*Plaintiff,*

*v.*

BIG RIVER CONSTRUCTION, INC.,
an Oregon corporation,

dba Big River Excavating; and
Safeco Insurance Company of America, a surety,
*Defendants.*

Tillamook County Circuit Court 102047;

A152131

386 P3d 19

John J. Hickey argued the cause for appellant-cross-respondent. With him on the briefs were John H. Baker and Jordan Ramis PC.

Sara Kobak argued the cause for respondent-cross-appellant Big River Construction, Inc. With her on the joint answering brief were Darien S. Loiselle and Schwabe, Williamson & Wyatt, P.C.; and Jan D. Sokol and Stewart Sokol & Gray LLC for respondent Safeco Insurance Company

of America. With her on the cross-opening and reply on cross-appeal briefs were Darien S. Loiselle and Schwabe, Williamson & Wyatt, P.C.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Judy C. Lucas, Assistant Attorney General, filed the brief *amicus curiae* for Oregon Department of Transportation.

Before Armstrong, Presiding Judge, and Sercombe, Judge, and Egan, Judge.*

---

\* Sercombe, J., *vice* Nakamoto, J. pro tempore.

**SERCOMBE, J.**

Plaintiff, a general contractor, brought this action against defendant City of Tillamook alleging a breach of contract and related claims regarding the parties' contract to expand the city's wastewater treatment facility. Plaintiff sought compensation for the direct and indirect costs it incurred due to delays in the construction project. The city denied that it breached the contract and asserted counterclaims against plaintiff for breach of contract and unjust enrichment, and asserted a bond claim against plaintiff and plaintiff's surety.[1] The case was tried before a jury, which found that the city had breached the contract and plaintiff had not, and that plaintiff was entitled to money damages.

The city appeals a general judgment and money award to plaintiff and third-party defendant in the amount of $1,527,907.38, and a supplemental judgment awarding attorney fees, costs and disbursements, and prevailing party fees to plaintiff and third-party defendant. The city raises seven assignments of error on appeal. We reject the city's second and fourth through seventh assignments of error without discussion, and write to address the first and third assignments of error, in which the city contends that the trial court erred in denying certain portions of its motions for directed verdict. As we explain below, we agree in part with the city's first and third assignments of error, in that claims for certain categories of plaintiff's damages should not have been submitted to the jury, and, accordingly, we reverse the general judgment and remand for a new trial on damages only. As a result of that disposition, the supplemental judgment is also reversed and remanded. ORS 20.220(3)(a).

Plaintiff cross-appeals the prejudgment interest award of the general judgment entered in its favor. Plaintiff contends that the trial court erred when it denied plaintiff's request for an award of penalty interest under ORS 279C.570(8) in addition to prejudgment interest awarded

---

[1] Safeco Insurance Company of America is the third-party defendant and a respondent to the city's appeal. Safeco filed a joint answering brief with plaintiff and does not assert any separate arguments. For simplicity, we refer only to plaintiff and the city in this opinion. Safeco is not a party to plaintiff's cross-appeal.

pursuant to ORS 279C.570(9). We reject plaintiff's argument and conclude that ORS 279C.570 does not authorize the application of more than one interest rate to a money award. Consequently, we affirm on plaintiff's cross-appeal.

In reviewing the denial of the city's motions for directed verdict, we will set the verdict aside only if we conclude that there was no evidence from which the jury could have found for plaintiff. *Brown v. J.C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984). "A directed verdict is appropriate only if there is a complete absence of proof on an essential issue or when there is no conflict in the evidence and it is susceptible of only one construction." *Malensky v. Mobay Chemical Corp.*, 104 Or App 165, 170, 799 P2d 683 (1990), *rev den*, 311 Or 187 (1991). Because the jury rendered a verdict in plaintiff's favor, we "consider the evidence, including inferences, in the light most favorable to plaintiff" and do not weigh the evidence. *Brown*, 297 Or at 705. We state the relevant facts consistently with that standard.

In June 2007, plaintiff and the city entered into a construction contract in which plaintiff agreed to be the contractor for the city's wastewater treatment plant expansion project and the city agreed to pay plaintiff almost $11 million for that work. The city hired Kennedy/Jenks Consultants, Inc. (engineer), an engineering firm, to design and manage the construction project. The city and the engineer agreed to provide plans and specifications to plaintiff that were sufficient to build the project.

Plaintiff began working on the project in the summer of 2007. The contract provided that the project would be substantially completed within approximately 14 months—in the fall of 2008.[2] However, due to delays, which plain-

---

[2] The contract defines "substantial completion" as follows:

"'Substantial Completion' means the Work has progressed to the point that: (1) the Work is ready for beneficial use and occupancy by the Owner for the intended purpose, (2) all fire and life safety work has been completed, inspected and accepted, (3) all mechanical and process systems and equipment are complete and have been put in automatic operation, (4) the total value of uncompleted work is less than one-half of one percent of the Contract Price and (5) completing the Work will not significantly interfere with the Owner's convenience, use or cost of operation."

tiff attributes to the engineer's design deficiencies and project mismanagement, according to plaintiff, the project was not substantially completed until January 2010. The contract provided that plaintiff would pay liquidated damages to the city if the original or agreed-upon extended substantial completion and final completion dates were not met.[3]

The scope of the construction contract changed throughout the project. The engineer issued 91 change orders and at least 15 work directive change orders.[4] Plaintiff claims that, from the outset of the project, numerous design deficiencies and other problems caused by the city or the engineer resulted in substantial extra costs and delays. In February 2008, plaintiff submitted to the engineer a request for an equitable adjustment to the contract, seeking an increase in price and an extension of time. The parties mediated that claim and eventually settled it in April 2009. The settlement was reflected in Change Order 65, which added $940,000 to the contract price and extended the substantial completion date to June 4, 2009. Certain claims and disputes regarding the project were unresolved at the time of Change Order 65; the city and plaintiff agreed to carve those out to be dealt with at a later date.

By the time of the new substantial completion date in June 2009, plaintiff had completed 97 percent of the scope of work set out in the original contract and the change orders up to that date. However, in 2009, the engineer continued to add scope to the project through additional change orders and work directive change orders, including, according to plaintiff's project manager, 12 work directive change orders that were issued in the last phase of the project in or after February 2009.

---

[3] The contract defines "final completion" to mean that "the Work has been fully completed in accordance with the Contract Documents and is ready for acceptance and final payment by the Owner."

[4] Generally, when a contractor and engineer agree to the price and time for a change in work, they sign a "change order" that reflects the new scope. If the contractor and engineer cannot agree on the cost for a change in scope, or if the engineer does not have enough information to set a price, the engineer can issue a work directive change order, which requires that the contractor proceed on a time and materials basis with no agreement on price.

Plaintiff used a "critical path" management schedule for the project.[5] The construction contract provides that, if the critical path of construction tasks is affected by a change order that is the sole cause for changing the length of time required to complete the work, then the contractor is to be compensated. The parties disagreed on whether certain change orders or work directive change orders affected the critical path toward substantial completion of the project. That disagreement ultimately resulted in a dispute about whether certain costs claimed by plaintiff should be paid.

Plaintiff claimed that changes in design and scope by the city and the engineer delayed the project and resulted in additional costs. Plaintiff submitted claims for those costs but was not paid. Plaintiff claimed that the changes that caused delay and increased costs included changes related to major systems of the wastewater treatment facility such as the sludge transfer and storage system, hypochlorite disinfectant system, and sodium bisulfate system. In addition, plaintiff claimed that other late redesigns and work directive change orders also resulted in extra costs and delays to the final phase of the project.

According to plaintiff, the engineer never provided any written design plans for the sludge transfer and storage system. Instead, for work on that system, the engineer directed plaintiff's work in the field on a daily basis with no written plans and no schedules of the upcoming work. Due to the frequency of those directions and the scope of that work changing often, plaintiff was unable to plan ahead regarding the need for manpower, tools, and equipment. As a consequence, plaintiff kept tools and equipment on site so that whatever was needed to get the work done was available.

In the fall of 2009, the city stopped making payments on plaintiff's monthly pay applications, but plaintiff continued to work on the project. In December 2009 and January 2010, plaintiff and the engineer exchanged

---

[5] According to plaintiff's witnesses, critical path scheduling is a tool that is used to show the plan for project completion and to provide notice of the temporal effect of changes to the scope or duration of the work; it shows the sequence of work to be performed, which is scheduled in such a way that the work is done in the most efficient way possible.

correspondence regarding substantial completion of the project, and the engineer eventually recommended certification of the same. Around the same time, the engineer, on behalf of the city, also notified plaintiff that liquidated damages were accruing against plaintiff for not substantially completing the project in July 2009. In January 2010, the engineer issued punch-lists of tasks that plaintiff was required to complete to achieve final completion under the contract. Although plaintiff requested final inspection of the project on March 30, 2010, the engineer did not certify final completion of the contract and continued to issue liquidated damages notices through April 2011. Plaintiff disputed that liquidated damages were owed.

Plaintiff submitted a claim dated March 3, 2010, to the engineer for an equitable adjustment to increase the time and price of the contract pursuant to Article 10 (Claims and Disputes) and Article 11 (Contract Time and Delays) of the parties' contract. The engineer, on behalf of the city, denied that claim in its entirety. Plaintiff also submitted claims to the engineer for outstanding pay applications and to dispute deductive change orders, which were denied or otherwise unresolved. The parties were unable to resolve outstanding claims, and plaintiff filed this action.

Plaintiff claimed, in its first amended complaint, that the city breached the construction contract in a number of ways, including failing to pay the final pay application and retention, failing to compensate plaintiff in accordance with the contract, causing delay to the project, increasing contract scope without providing compensation, failing to issue appropriate change orders for equitable time extensions due to critical path increases, failing to operate in good faith, failing to provide plans and specifications that were sufficient and suitable for construction, and failing to accurately determine substantial and final completion. As damages, plaintiff claimed at trial that the breaches caused it to suffer general jobsite costs, costs for small tools, and home office overhead due to the extension of the project, as well as additional project management and scheduler costs, increased bonding and insurance, and subcontractor costs. Plaintiff also claimed a contractual markup on certain costs

and sought payment of outstanding invoices that remained unpaid by the city.

The jury trial took place in March 2012. For most of its claimed delay-related damages, plaintiff used the time period of June 4, 2009 through February 17, 2010—258 days—and provided a calculation of its total damages based on the sum of its daily cost for the entire delay period. Plaintiff calculated the contract markup and bonding and insurance as a percentage of other claimed damages.

After the close of plaintiff's evidence, the city moved for a directed verdict on several grounds by way of four separate motions, contending generally that the evidence presented did not support a determination that the city had breached the contract or that plaintiff had suffered compensable damages. The city moved against plaintiff's overall claims as well as against particular damage categories within the claims. After the court granted certain motions, or portions thereof, and denied others, the jury trial proceeded with the city's evidence. After the close of all of the evidence, the city renewed its previously denied motions for directed verdict. After denial of the motions pertinent to this appeal, the case was submitted to the jury, which returned a verdict in plaintiff's favor. The city's counterclaim for breach of contract was unsuccessful; the jury found that plaintiff did not breach the parties' contract.

In the two assignments of error that we write to address, the city asserts that the trial court erred in denying its motions for directed verdict that were directed against particular kinds of damages that plaintiff claimed or by not giving appropriate peremptory instructions regarding those categories of damages. We note that the city did not request peremptory instructions from the trial court as alternatives to its motions for directed verdict, and therefore did not preserve that contention for appeal. ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court and is assigned as error in the opening brief in accordance with this rule, provided that the appellate court may consider an error of law apparent on the record."). However, this particular lack of preservation has no real effect on our consideration of the

issues before us. We have previously stated that "[t]he effect of either motion is the same, [withdrawing an issue from the jury,] and, on appeal, the standard for reviewing the trial court's ruling on a request for a peremptory instruction would be the same as our review of the directed verdict ruling." *Mead v. Legacy Health System,* 231 Or App 451, 456 n 5, 220 P3d 118 (2009), *rev'd in part on other grounds,* 352 Or 267, 283 P3d 904 (2012).[6]

The city contends in its first assignment of error that the trial court erred in denying its motion for directed verdict because plaintiff failed to prove its damages with reasonable certainty. The city argues generally that plaintiff's evidence of costs and delay required speculation by the jury, and it asserts that the evidence was therefore insufficient to submit the delay duration and certain categories of damages (*i.e.,* home office overhead, bonding and insurance costs, jobsite small tools, and general conditions) to the jury.

In its third assignment of error, the city contends that the trial court erred in denying its motions for directed verdict because plaintiff was not entitled to recover damages for plaintiff's actual costs for contract performance when the contract specified the payment due. The city asserts that plaintiff's damages were limited to the contract price (*i.e.,* the costs outlined in the contract—for overhead, small tools, subcontractor overhead, and associated markups). The city's argument is, essentially, that certain categories of damages were not recoverable at all, and therefore should not have been submitted to the jury.

Generally, "[i]n a breach of contract claim, a plaintiff may recover damages that are caused by the breach and that are foreseeable and not speculative." *Stuart v. Pittman,*

---

[6] In addition, the city should have requested peremptory instructions to the jury rather than moving for a directed verdict regarding particular categories of damages. "A motion for a directed verdict is not the proper vehicle for asking the trial court to decide as a matter of law that the movant is entitled to prevail on less than all of the elements of a claim." *NW Pac. Indem. v. Junction City Water Dist.,* 296 Or 365, 372 n 1, 677 P2d 671 (1984). However, because plaintiff did not make a procedural objection to the trial court and the court proceeded with the city's motions that raised the particular matters that are disputed on appeal, we are not barred from considering the city's claimed errors. *Stokes v. Lundeen,* 168 Or App 430, 434 n 3, 7 P3d 586, *rev den,* 331 Or 283 (2000).

235 Or App 196, 206, 230 P3d 958 (2010), *rev'd on other grounds*, 350 Or 410, 255 P3d 482 (2011). "It is well settled that [a] plaintiff is not required to prove the amount of * * * damages with mathematical certainty. [A plaintiff] need only establish the fact of damage and evidence from which a satisfactory conclusion as to the amount of damage can be reached." *North Pacific Lbr. v. Moore*, 275 Or 359, 366, 551 P2d 431 (1976). Stated another way, the "reasonable certainty" standard for proving damages, which applies in a breach of contract case, "is not a demanding standard"— all that is required is "reasonable probability." *Tasden v. Praegitzer Industries, Inc.*, 324 Or 465, 471-72, 928 P2d 980 (1996). Whether the damages claimed by plaintiff are proved is a matter for the jury. *Id.* at 473. "The reasonable certainty standard is intended 'to screen out an issue from the jury when the court has concluded that the evidence, taken as a whole, is clearly insufficient to establish the fact sought to be proved.'" *Peterson v. McCavic*, 249 Or App 343, 354-55, 277 P3d 572, *rev den*, 352 Or 564 (2012) (quoting *Welch v. U.S. Bancorp*, 286 Or 673, 704, 596 P2d 947 (1979)).

In its first assignment of error, the city challenges the sufficiency of evidence on plaintiff's damage claim for extended home office overhead costs during the delay—the "back support" at the home office that includes costs such as accounting and support staff, operating expenses, and other administrative costs. The city contends that the trial court erred as a matter of law in allowing plaintiff to use the "modified *Eichleay* formula" to calculate its claimed home office overhead damages.[7] The city argues that Oregon

_____

[7] The *"Eichleay* formula" is a methodology used to compute extended home office overhead damages—unabsorbed overhead—that are claimed as a result of delay, suspension, or disruption of a construction contract. The name of the formula comes from a case involving federal government construction contracts in which the formula was used. *Appeal of Eichleay Corp.*, ASBCA No 5183, 60-2 BCA ¶ 2688, 1960 WL 538, *adh'd to on recons*, ASBCA No 5183, 61-1 BCA ¶ 2894, 1960 WL 684. In the *Eichleay* calculation of extended home office overhead damages, the contractor takes the ratio of contract billings to total billings for the contract performance period and multiplies that ratio by the home office overhead for the performance period. That figure is divided by the number of days of performance to determine a daily rate of overhead. The daily rate is multiplied by the number of days of delay. William Schwartzkopf & John J. McNamara, *Calculating Construction Damages* § 6.05 (2d ed Cumulative Supp 2016-1). Plaintiff used a modified version of the formula in which it based the calculation on the time

courts have not allowed the use of the *Eichleay* formula to estimate home office overhead damages and that the modified *Eichleay* formula has been universally rejected by courts because it does not accurately account for home office overhead. The city further argues that, even if an *Eichleay* formula was appropriate, there was no evidence that plaintiff was on standby, as required by the formula, for the 258 days claimed by plaintiff as the period of delay. Rather, the city asserts, plaintiff performed original and changed work during the entire extended contract period and received an overhead markup on the changed work, which adequately compensated plaintiff.

Plaintiff responds that, as an initial matter, the city failed to preserve any argument that the formula was improper because of its modifications. Plaintiff also argues that the city identifies no reason why plaintiff's damages formula was unreliable, and that plaintiff was only required to establish—and did establish—its home office overhead cost damages to a reasonable certainty.

As noted, a party claiming error must preserve that argument by presenting it to the trial court before we will consider it on appeal. ORAP 5.45(1). The preservation requirement serves multiple purposes. It allows the adversary to present its position and permits the court to understand and avoid or correct the error. *Quick Collect, Inc. v. Higgins*, 258 Or App 234, 239, 308 P3d 1089 (2013). It also promotes a "full development of the record, which aids the trial court in making a decision and the appellate court in reviewing it." *Id.* (internal quotation marks omitted). We have explained that, "to properly preserve an issue for review, a party's argument before the trial court must be such that 'the other parties and the court would understand [the arguing party to be referencing] a particular legal or factual argument,' and also should permit other parties and the court to understand the 'essential contours of the full argument.'" *State v. Penney*, 252 Or App 677, 684, 288 P3d

period of the contract extension. Plaintiff calculated the ratio of extended project billings to total billings during the extended period and multiplied that ratio by the actual home office overhead during the extended period to determine the overhead allocated to the project. Plaintiff then divided that number by the claimed number of delay days to reach a daily overhead rate.

989 (2012) (quoting *State v. Haynes*, 352 Or 321, 335, 284 P3d 473 (2012) (brackets in *Penney*)). Here, the city failed to preserve its contention that the use of the modified *Eichleay* formula was improper.

At trial, the city filed written motions for directed verdict. In regard to the extended home office overhead damages, the city argued in writing that plaintiff was "not entitled to recover any such costs" and that they were "entirely speculative." The city stated its argument as follows:

> "First, no court in Oregon has yet awarded such damages, or even found them to be recoverable. *U.S. F. & G. v. Stanley Contracting, Inc.*, 396 F Supp 2d 1157, 1172 (D. Or. 2005). Second, these damages are appropriate for a contractor if, and only if, there is an actual delay in work and 'the owner required the contractor to remain on standby during the delay.' *Yacht West, Ltd. v. Christensen Shipyards, Ltd.*, 702 F Supp 2d 1292, 1302 (D. Or. 2010). Here, there was no such delay and [plaintiff] put on no evidence of any such delay or standby. Third, even if [plaintiff] were entitled to these damages, the evidence shows that [plaintiff] substantially over-calculated the recoverable damages under the applicable formula."

The city did not supplement this portion of its written motion with oral argument to the court.

At no time did the city argue to the trial court that the *formula* used to calculate the extended home office overhead damages was improper or otherwise alert the court that it was claiming that the methodology itself was inappropriate. And, by referencing the "applicable formula," the city suggested to the court that the use of a formula was appropriate to calculate these kinds of damages. Accordingly, the city's argument that the formula used by plaintiff was improper is not preserved for our review.[8]

We understand the second part of the city's argument to be that, because plaintiff continued to work during the claimed period of delay rather than remaining idle on standby, plaintiff continued to have income—the markup on

---

[8] Because the issue is unpreserved, we do not reach the question whether the "*Eichleay* formula," or a modified version thereof, is a proper method to measure a contractor's claimed unabsorbed office overhead costs in Oregon.

the original and changed contract work—that compensated it for home office overhead and that, therefore, there are no actual damages in this claimed category.

Plaintiff argues that it offered evidence that its home office overhead costs were not absorbed with any markup on direct billings during the delay period because its work was significantly interrupted and spread over an extended time due to the engineer's repeated failures to provide adequate plans on a timely basis. Plaintiff states that it offered evidence that the design deficiencies caused long waits to procure special parts, pushed back start times, and created inefficiencies for plaintiff to perform its work. Plaintiff also claims that it showed that it could not seek other work during this time period and that the design deficiencies imposed a heavy administrative burden and substantially increased its costs. Considering the evidence and all proper inferences in the light most favorable to plaintiff, we conclude that there is sufficient evidence in the record to meet the "reasonable certainty" standard and that the court did not err on this basis in submitting the home office overhead cost damages to the jury for its consideration.

In its third assignment of error, the city challenges the extended home office overhead cost damages on another basis. It asserts that plaintiff's damages were limited to the contract price for overhead[9] and that plaintiff could not recover its actual costs that were not specified in the contract. The city states that the contract provided that plaintiff would be paid for overhead for additional work on a percentage markup basis and that recovery for actual overhead costs gave plaintiff more than the benefit of its bargain.

Plaintiff responds that it was entitled to recover delay damages for overhead and other delay costs, some of which are consequential damages not specifically written into the parties' contract. Plaintiff argues that it was permitted to seek an equitable adjustment to the contract by making a claim under Article 10 of the contract, which states, in part, that "[a] Claim is a written demand by one of the parties to the Contract for an interpretation of Contract

---

[9] In this section of its argument, the city categorizes "overhead" as being comprised of extended home office overhead and jobsite general conditions.

terms or an adjustment in Contract conditions including Price or Time."

As a general matter, it is Oregon's long-established rule that, in the appropriate case, the injured party in a breach of contract action may recover consequential damages in addition to loss of bargain damages. *Logan v. D. W. Sivers Co.*, 343 Or 339, 353-54, 169 P3d 1255 (2007). The Supreme Court stated the general rule in *Senior Estates v. Bauman Homes*, 272 Or 577, 585, 539 P2d 142 (1975) (quoting *Blagen v. Thompson*, 23 Or 239, 31 P 647 (1892)):

> "'[T]he Plaintiff may recover such damages, including gains prevented as well as losses sustained, as may reasonably be supposed to have been within the contemplation of both parties at the time of the making of the contract as the proximate and natural consequence of a breach by defendants.'"

The city cites *Senior Estates* to support its contention that plaintiff was not entitled to more than the contract price for its damages because allowing recovery of the same would give plaintiff more than the benefit of its bargain. However, the city's reliance on *Senior Estates* is misplaced.

*Senior Estates* was an action for damages for breach of a land sale contract brought by the vendor, a developer of a retirement community, against the purchaser, who contracted to sell lots and build homes on those lots for the purchasers. The project contemplated by the contract was unsuccessful. Plaintiff filed suit and sought consequential damages as part of its claim, which included damages claimed for property taxes, interest on bank notes, refinancing charges, and title insurance costs. The Supreme Court determined that certain claimed consequential damages were recoverable and others were not. The court allowed recovery of property tax costs, finding that they "could reasonably be supposed to have been within the contemplation of the parties as a consequence of defendant's breach." *Id.* at 587. However, it disallowed claims for interest and refinance charges on the basis that those costs were not reasonably within the contemplation of both parties at the time of entering into the contract. *Id.* at 588-90. And, the court determined that plaintiff was not entitled to title insurance

costs because, by the terms of the contract itself, plaintiff was to pay the title insurance, therefore payment of that cost by defendant was not part of the benefit of plaintiff's bargain. *Id.* at 590. The court did not, as the city suggests, hold that no damages could be awarded if they were outside of the specific terms of the contract.

Based on the general rule as set out in *Senior Estates*, it is possible that consequential damages could be available to plaintiff here. That is to say, plaintiff could have incurred additional overhead costs because the duration of the contract was extended in fits and starts, causing costs that were beyond those that would have been incurred in an uninterrupted or normal administration of the construction activities. The city does not advance any argument as to why consequential damages would not be proper under the test articulated in *Senior Estates*, and we do not develop such an argument for the city. *See Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700 n 2, 64 P3d 1193, *adh'd to on recons*, 187 Or App 472, 68 P3d 259 (2003) ("[I]t is not this court's function to speculate as to what a party's argument might be. Nor is it our proper function to make or develop a party's argument when that party has not endeavored to do so itself."). Therefore, we conclude that the court did not err when it denied the city's motion for directed verdict and permitted the jury to consider the delay-related damage claims for overhead.[10]

Lastly, regarding damage categories that were properly submitted to the jury, viewing the evidence in the light most favorable to plaintiff, we conclude that there was sufficient evidence to submit plaintiff's claims for damages for jobsite small tools and jobsite general conditions to the jury and that there was sufficient evidence of the period of delay. An extended discussion of these claims would not be helpful to the bench, the bar, or the public, and we therefore affirm the trial court's denial of the city's motions for directed verdict that were based on a claimed insufficiency

---

[10] The city makes a similar argument about jobsite small tools—that the contract specifies a percentage markup or excludes certain tool costs and that the damages are limited to the contract terms. We reject that argument for the same reason we reject the city's argument about overhead.

of evidence regarding these claims without addressing them in further detail.

We turn next to the categories of damages that we conclude were submitted to the jury in error. The city challenges the sufficiency of evidence to support plaintiff's claim for bonding and insurance costs, arguing that the claimed damages are speculative because the amount claimed by plaintiff was a percentage of its total damages rather than an amount that plaintiff actually paid or was obligated to pay. Plaintiff responds that its calculation was consistent with industry standards because bonding and insurance costs are based on the value of the contract. We agree with the city that those damages, as presented at trial, are speculative.

Plaintiff's Trial Exhibit 2, which includes a chart of the total claimed damages, contains a line item for bonding and insurance, which is calculated at five percent of the total damages. Plaintiff's project manager, Hartman, testified that the bonding company and insurance company assess a rate to the contractor based on total volume of sales, and that, as the total volume of sales on this project increased, plaintiff would be assessed further costs. Hartman did not testify that plaintiff was actually billed for any additional insurance premium or bond assessment.

Assuming an estimate of these costs was the only information available at the time of trial, the estimate would have to be supported by more or different evidence than was presented here. Hartman did not testify to any basis for using five percent of the total claimed damages as the appropriate estimate for additional bonding and insurance costs. The Supreme Court has recognized that an expert's estimate can be "of sufficient competence and certainty to furnish a basis for a finding of a specific amount of damages" and that "[i]t is not a sufficient reason for disallowing damages claimed that they cannot be exactly calculated. It is sufficient if, from proximate estimates of witnesses, a satisfactory conclusion can be reached." *Cont. Plants v. Measured Mkt.*, 274 Or 621, 627, 547 P2d 1368 (1976) (expert testified regarding his estimate of the reasonable market value at auction of metal fabricating machinery). However, as to these claimed damages, the witness did not explain the basis for the percentage

or otherwise testify about the percentage figure that was used—*i.e.*, why five percent was used as opposed to another number—therefore, the witness's estimate is not sufficiently competent or certain. The bonding and insurance costs were not supported by sufficient evidence, and the court therefore erred in not granting the city's motion for directed verdict regarding this category of damages.

The final damage category that the city asserts should not have been submitted to the jury is the 15 percent markup that plaintiff claimed on its damages for extended jobsite general conditions, extended jobsite small tools, extended home office overhead, and project management and scheduler costs. The city argues, essentially, that the contract provides for a markup on costs to account for overhead, that these four categories of damages are overhead, and that plaintiff was not entitled to overhead markup on overhead damages. The result of plaintiff claiming costs in this way, according to the city, is that plaintiff claimed payment of overhead in three different, cumulative, and inconsistent ways—the contract markup on costs, plaintiff's actual overhead, and a markup on actual overhead—with the result being payment for costs that are contrary to the terms of the contract, which gave plaintiff more than the benefit of its bargain.

In response, plaintiff asserts that paragraphs 9.11.2, 9.11.3, and 9.11.5 of the contract authorized the costs it claimed as damages for jobsite general conditions and project management and scheduler costs. Those provisions provide that the following work is to be compensated:

".2   costs of materials, supplies and equipment, including cost of transportation, incorporated in the Work;

".3   rental costs of machinery and equipment, exclusive of portable power or hand tools, supplied by the Contractor or rented from others;

"* * * * *

".5   the increased or decreased cost of the Contractor's supervision and field office personnel but only if the change affects the 'critical path' of construction activities and requires a change in Contract Time[.]"

And, to the extent that the contract requires that the critical path be affected to be eligible for these costs, plaintiff argues that the jury found in its favor.

Plaintiff also argues that the applicable markup provision of the contract, paragraph 9.11.7, applies a standard markup to the costs for work performed as described in paragraphs 9.11.2, 9.11.3, and 9.11.5. That provision states that, "for work performed by the Contractor, the markup for overhead, profit and all other costs shall be subject to negotiation and shall be the lesser of 15% for work performed directly by the Contractor * * * or the markup included in escrowed bid documents." Plaintiff's reading of the contract is straightforward, and we agree with it. To the extent that the damages plaintiff requested fall into a cost category that is compensable under the contract, the contract provides for a markup on those costs.

However, plaintiff does not provide an explanation or point to any contract provision that would support applying a contractual markup to consequential damages or to an equitable adjustment to the contract. Plaintiff identifies those portions of its damage claim as extended home office overhead costs, small tool costs, and any jobsite general condition costs not covered by paragraph 9.11.

We agree with the city that there is no basis, here, on which plaintiff could properly be awarded a *contractual* markup on consequential damages or on an equitable adjustment to the contract. Therefore, the trial court erred in submitting the markup damages to the jury to the extent that the markup was on costs not specifically listed in paragraph 9.11 of the contract.

As a final matter regarding damage categories submitted to the jury, we note that the city failed to preserve its claimed error regarding subcontractor costs and subcontractor markup, and we therefore decline to consider whether those costs were properly submitted to the jury.[11]

---

[11] The claimed costs at issue are $140,278.55 for Christenson Electric Extended Jobsite and Office Overhead, $13,620.00 for Industrial Systems Extended Jobsite and Office Overhead, and $7,694.93 for Subcontractor Mark Up on the previous two cost items.

ORAP 5.45(1); *Penney*, 252 Or App at 684. In its motion for directed verdict, the city argued that the evidence presented was insufficient, stating that "Christensen Electric's alleged costs are suspicious and [plaintiff] has not put on evidence to establish the reasonableness or accuracy of these charges." In addition, the city conceded that "Industrial System's costs of $13,617.19 appear to be legitimate and there is evidence to support them." The city also argued below that plaintiff waived its claim for subcontractor markup because it failed to follow the claims procedure outlined in the parties' contract.

On appeal, the city argues for the first time that there is no contractual right to these costs. It asserts that the parties' contract provides that plaintiff's subcontractors would be paid for overhead for additional work on a percentage markup basis, which the city paid, and that plaintiff should not have been permitted to present evidence of two of the subcontractors' actual overhead to the jury. The city also argues that the costs and associated markup claimed at trial were not reasonably foreseeable at the time of contracting and an award of the same gives plaintiff and its subcontractors more than the benefit of their bargain. Defense counsel's written motions and oral argument to the trial court regarding subcontractor overhead and markup were fundamentally different arguments from the contentions presented on appeal and, therefore, the claimed error regarding subcontractor overhead and markup is not preserved for our review. *Penney*, 252 Or App at 684.

In summary, we conclude that the trial court erred in not granting the city's motions for directed verdict in two respects. Plaintiff's claim for damages for bonding and insurance costs was not supported by sufficient evidence; therefore, it was error for the trial court to permit that claim to be submitted to the jury. And, to the extent that the jury was permitted to consider as damages a contractual markup on costs that were not specified in the parties' contract, the trial court erred in not granting the city's motion for directed verdict on that markup.

We turn to whether the trial court's errors require reversal. ORS 19.415(2) provides that "[n]o judgment shall

be reversed or modified except for error substantially affecting the rights of a party." That statutory standard "assesses the extent to which an error skewed the odds against a legally correct result." *Purdy v. Deere and Company*, 355 Or 204, 226, 324 P3d 455 (2014). We must reverse if there is "'some' or a 'significant' likelihood that the error influenced the result." *Id.* To make that determination, we review the record as a whole, "taking into account the parties' theories of the case, the evidence presented at trial, the jury instructions, and any other parts of the record—such as the verdict form—that may be probative of how the error affected the party complaining of it." *Hadley v. Extreme Technologies, Inc.*, 272 Or App 49, 66, 355 P3d 132, *rev den*, 358 Or 449 (2015).

Here, one of the core issues in the case was the amount of damages that the city would owe to plaintiff if plaintiff proved that the city had breached the parties' contract and caused monetary damages. As previously described, the city disagreed that plaintiff was entitled to certain categories of damages and sought resolution by way of motions for directed verdict rather than requesting peremptory jury instructions. The court instructed the jury in general terms regarding damages for breach of contract and consequential damages.

Most significant to our analysis is plaintiff's Trial Exhibit 2, which contained a list by category of plaintiff's claimed damages.[12] In its closing argument, plaintiff directed the jury to Exhibit 2 to use as its guide for the kind and amount of damages to award, and asked for a total award of $1,616,427. We have concluded that it was error for the court to permit the jury to consider two of the damage categories listed in Exhibit 2. Of the total damages sought, $76,972.75 represented plaintiff's claim for bonding and insurance, which was calculated at five percent of the total damages requested and submitted to the jury in error; $126,968.04 was for markup, a portion of which was submitted to the

---

[12] Trial Exhibit 2 was a notebook that contained a one-sheet summary of plaintiff's claimed damages, with a compilation of backup documents. The record indicates that the summary page of Exhibit 2 was altered to redact or delete certain damages to reflect the court's rulings on the city's motions for directed verdict before the exhibit was given to the jury to review during its deliberations.

jury in error. The jury awarded $1,527,907.38—nearly all of plaintiff's requested damages. Given that result, there is some likelihood that the jury awarded plaintiff more than it was entitled to.

Thus, the error of submitting the bonding and insurance and markup damages to the jury for consideration and potential inclusion in its award had some likelihood of influencing the jury to reach a legally erroneous result, which substantially affected the rights of the city. *Purdy*, 355 Or at 226; *see, e.g., Hadley*, 272 Or App at 67 (trial court's error in instructing the jury was reversible error because it permitted the jury to apply the wrong legal rule in determining whether defendant's breach of an agreement caused plaintiff to suffer damages). Accordingly, we reverse and remand for a new trial.

As to the scope of the remand, we remand for a new trial on the issue of damages only. The Supreme Court has explained that, "[u]nder appropriate circumstances, [an appellate court] may remand a case for a new trial on a part only of the issues raised in the original proceeding." *Brown v. Bonesteele*, 218 Or 312, 335, 344 P2d 928 (1959). We conclude that this is an appropriate case for limiting the scope of the remand. The issue of whether there was a breach of the contract and the issue of damages are separate issues, and, because the jury found that the city had breached the contract, we need only remand for a determination of the amount of damages that should be awarded to plaintiff. *See id.*

We turn next to plaintiff's cross-appeal. In its cross-appeal, plaintiff assigns error to the trial court's denial of its request for an award of what it describes as "penalty interest" under ORS 279C.570(8), which requires the contracting agency to pay interest on a final payment due under a public improvement contract in the circumstances described in that subsection of the statute. Plaintiff seeks a remand for revision of the interest award, asserting that it is entitled to interest under ORS 279C.570(8), *in addition to* the interest awarded by the trial court under ORS 279C.570(9). Although we have reversed the general judgment on the city's appeal, we address plaintiff's cross-appeal because

it concerns an issue that is likely to arise on remand. For the reasons below, we conclude that the court did not err in denying plaintiff's request for an award of interest pursuant to ORS 279C.570(8), in addition to the prejudgment interest it awarded pursuant to ORS 279C.570(9).[13]

After completion of the jury trial, the parties disputed the form of judgment to be entered by the trial court. Part of the dispute, pertinent to this cross-appeal, involved the award of prejudgment interest on the money award for plaintiff. The trial court entered an award of prejudgment interest based on ORS 279C.570(9), which provides for interest "upon settlement or judgment in favor of the contractor regarding any dispute as to the compensation due a contractor for work performed under the terms of a public improvement contract." Plaintiff argues that it was entitled to interest on the money award under two subsections of the statute—interest for late payment of the final amount due under the contract, ORS 279C.570(8), and interest on the judgment, ORS 279C.570(9).

The parties' dispute reduces to whether ORS 279C.570 requires the award of interest under more than one subsection of that statute on the same judgment. That particular question appears to be one of first impression in this state. Although plaintiff cites case law in support of its position, none of the proffered cases involves similar circumstances in which a party was seeking the simultaneous application of more than one interest rate on a judgment under ORS 279C.570. *See, e.g., Contractors, Inc. v. Tri-Met,* 94 Or App 392, 766 P2d 389 (1988), *rev den,* 307 Or 571 (1989) (contractor sued Tri-Met to recover retainage withheld, plus interest on that retainage, under the predecessor statute to ORS 279C.570(8)); *Gilbert Pacific Corp. v. Dept. of Transportation,* 110 Or App 171, 177-78, 822 P2d 729 (1991), *rev den,* 313 Or 210 (1992) (plaintiff was awarded prejudgment interest on a judgment and the dispute involved which version of the statute applied to determine the applicable

---

[13] We do not understand plaintiff to argue that the interest rate under ORS 279C.570(8) should apply to only a portion of the money award, while the interest rate under subsection (9) should apply to the remainder. To the extent that plaintiff is making that argument, it is unpreserved and we do not consider it.

rate of interest). Our analysis therefore requires an interpretation of the statute.

We review questions of statutory interpretation for legal error. *Shin v. Sunriver Preparatory School, Inc.*, 199 Or App 352, 372, 111 P3d 762, *rev den*, 339 Or 406 (2005). We begin by examining the text and context of the statute, and then proceed, if necessary, to any relevant legislative history provided by the parties. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009); ORS 174.020. Text and context of the statute "must be given primary weight in the analysis." *Gaines*, 346 Or App at 171.

ORS 279C.570 is a prompt-payment statute regarding public improvement contracts. ORS 279C.570(1) provides that "[i]t is the policy of the State of Oregon that all payments due on a public improvement contract and owed by a contracting agency shall be paid promptly." The statute sets out rules for contracting agencies to make monthly progress payments during a project, to hold back retainage amounts[14] from the progress payments, to pay the retainage with the final payment at the end of the project, and to pay interest on late payments and on settlements or judgments after a dispute has been resolved. The pertinent portions of ORS 279C.570 are as follows:

"(2) Contracting agencies shall make progress payments on the contract monthly as work progresses on a public improvement contract. Payments shall be based upon estimates of work completed that are approved by the contracting agency. A progress payment is not considered acceptance or approval of any work or waiver of any defects therein. The contracting agency shall pay to the contractor interest on the progress payment, not including retainage, due the contractor. The interest shall commence 30 days after receipt of the invoice from the contractor or 15 days after the payment is approved by the contracting agency, whichever is the earlier date. The rate of interest charged to the contracting agency on the amount due shall

---

[14] "Retainage" is defined as "the difference between the amount earned by a contractor on a public improvement contract and the amount paid on the contract by the contracting agency." ORS 279C.550. "A contracting agency may reserve as retainage from any progress payment on a public improvement contract an amount not to exceed five percent of the payment." ORS 279C.570(7).

equal three times the discount rate on 90-day commercial paper in effect at the Federal Reserve Bank in the Federal Reserve district that includes Oregon on the date that is 30 days after receipt of the invoice from the contractor or 15 days after the payment is approved by the contracting agency, whichever is the earlier date, but the rate of interest may not exceed 30 percent.

"(3)   Interest shall be paid automatically when payments become overdue. *** Interest payments shall accompany payment of net due on public improvement contracts. ***

"* * * * *

"(6)   Payment of interest may be postponed when payment on the principal is delayed because of disagreement between the contracting agency and the contractor. Whenever a contractor brings formal administrative or judicial action to collect interest due under this section, the prevailing party is entitled to costs and reasonable attorney fees.

"* * * * *

"(8)   The retainage held by a contracting agency shall be included in and paid to the contractor as part of the final payment of the contract price. The contracting agency shall pay to the contractor interest at the rate of 1.5 percent per month on the final payment due the contractor, interest to commence 30 days after the work under the contract has been completed and accepted and to run until the date when the final payment is tendered to the contractor. The contractor shall notify the contracting agency in writing when the contractor considers the work complete and the contracting agency shall within 15 days after receiving the written notice, either accept the work or notify the contractor of work yet to be performed on the contract. If the contracting agency does not, within the time allowed, notify the contractor of work yet to be performed to fulfill contractual obligations, the interest provided by this subsection shall commence to run 30 days after the end of the 15-day period.

"(9)(a)   The contracting agency shall pay, upon settlement or judgment in favor of the contractor regarding any dispute as to the compensation due a contractor for work performed under the terms of a public improvement

contract, the amount due plus interest at the rate of two times the discount rate, but not to exceed 30 percent, on 90-day commercial paper in effect at the Federal Reserve Bank in the Federal Reserve district that includes Oregon on the date of the settlement or judgment, and accruing from the later of:

"(A)   The due date of any progress payment received under the contract for the period in which such work was performed; or

"(B)   Thirty days after the date on which the claim for the payment under dispute was presented to the contracting agency by the contractor in writing or in accordance with applicable provisions of the contract.

"(b)   Interest shall be added to and not made a part of the settlement or judgment."

Plaintiff acknowledges that two of the interest provisions, subsections (2) and (8), prescribe interest on amounts owed under a public improvement contract, and that the third provision, ORS 279C.570(9), prescribes prejudgment interest on a settlement or judgment in favor of a contractor in a compensation dispute.[15] Plaintiff argues that the trial court erred in concluding that subsection (8) is rendered inapplicable when a public agency disputes the payment due to a contractor and the dispute ultimately is resolved by a judgment. Plaintiff asserts that the interest due on a judgment, in subsection (9), is to be awarded in addition to—not as a substitute for—any interest owed under ORS 279C.570(2) and (8).

The city asserts that ORS 279C.570 specifies three different interest rates for three different circumstances, only one of which is applicable here. Under a plain reading of the statute and reading its subsections in context, we agree.

ORS 279C.570(2) requires the contracting agency to make monthly progress payments on the contract, and, if those payments are not timely, to "pay * * * interest on the progress payment, not including retainage, due the contractor."

---

[15]  ORS 279C.570(2) is not at issue; however, we include it in our discussion as part of the contextual analysis of ORS 279C.570.

ORS 279C.570(8) addresses the payment of interest on the final payment due, including retainage, under the contract. Pursuant to subsection (8), the contracting agency must pay one and one-half percent per month on the final payment, with the interest to begin 30 days after the work under the contract has been "completed and accepted," and running until the final payment is tendered to the contractor. The contracting agency must, within 15 days after receiving written notice from the contractor that it considers the work to be complete, either accept the work or notify the contractor of work yet to be performed on the contract. If the agency does not do one of these two things within that timeframe, the interest begins to run starting 30 days after the end of the 15-day period.

And, lastly, ORS 279C.570(9) requires the contracting agency to pay interest to the contractor "upon settlement or judgment in favor of the contractor *regarding any dispute as to the compensation due a contractor for work performed* under the terms of a public improvement contract." (Emphasis added.) Interest under subsection (9) accrues from the later of (A) the due date of any progress payment under the contract for the period in which such work was performed; or (B) 30 days after the date on which the written claim for the payment under dispute was presented to the contracting agency by the contractor.

The first two categories, *viz.*, the interest prescribed in subsections (2) and (8), prescribe interest on payments that are due to the contractor according to the terms of the contract—monthly progress payments and the final payment of the contract price. The third category, *viz.*, the interest prescribed in subsection (9), takes into account the fact that parties entering into a public works contract may have a disagreement about what is owed—as they did here. In that event, interest is applied to the judgment, or settlement, once the dispute has been resolved. That is, as the city asserts, the statute distinguishes between undisputed and disputed payments.

Plaintiff argues that ORS 279C.570(6) supports its contention that two different interest rates should be applied at the same time. Nothing in the text of ORS 279C.570(6)

suggests that to be so. Subsection (6) provides that the payment of interest may be "postponed when payment on the principal is delayed because of disagreement between the contracting agency and the contractor." Thus, the language in subsection (6) indicates that the legislature contemplated a situation where there could be a disagreement between the contractor and the contracting agency, and that interest would be paid once that disagreement was resolved. Plaintiff asserts that the use of the word "postponed" makes it clear that payment of interest is only delayed—not excused—if disagreements exist. However, plaintiff does not point to any language in the statute to support its contention that this permitted postponement of interest supports its theory that more than one interest rate should be applied simultaneously. We see no basis on which to conclude that subsection (6) supports plaintiff's overall reading of ORS 279C.570.

Had the legislature intended for multiple interest rates to apply simultaneously to public improvement contract payments, it could have added language to ORS 279C.570 stating that intention. In construing a statute, our role is to "ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted." ORS 174.010. The statute as written does not require or authorize the simultaneous application of more than one interest rate, and we will not insert language to make it so.

On appeal, general judgment reversed and remanded for retrial of damages; supplemental judgment reversed and remanded. On cross-appeal, affirmed.