AOYAGI, J.
*785 *830 Plaintiff owns and operates an aircraft hangar at the Southwest Oregon Regional Airport in North Bend. A fire destroyed the concrete slab that served as the hangar floor. At the time, defendant insured the hangar, including the slab.[1] Plaintiff spent $1,284,288 to replace the slab. When defendant reimbursed plaintiff only $942,719 for the slab, plaintiff filed this action to recover the difference. In essence, plaintiff claimed that the replacement slab was "functionally equivalent" to the old slab, such that defendant was obligated to pay its full cost under the insurance contract, while defendant took the position that the replacement slab was an upgrade and that defendant was not obligated to pay for an upgrade. A key point of the parties' dispute was the meaning of "functionally equivalent" as used in the insurance contract. The court announced its legal conclusion on that issue on the first day of trial (agreeing with defendant's interpretation) and later gave a jury instruction consistent with its conclusion. The jury returned a verdict for defendant. On appeal from the resulting judgment, plaintiff assigns error to the court's jury instruction regarding the meaning of "functionally equivalent." For the reasons that follow, we reverse and remand.
FACTS
The following facts are undisputed. Plaintiff owns and operates an aircraft hangar at the Southwest Oregon Regional Airport in North Bend. The original hangar was built in 1941 and had a concrete slab floor. In 2012, the airport was in the process of building a new commercial hangar nearby, and plaintiff was renovating the original hangar for use to support the new commercial hangar. Specifically, plaintiff was demolishing the original hangar structure, but it intended to keep the original slab floor and build a new hangar on it that would, among other things, have larger doors. Plaintiff had historically used the hangar to park *831 light aircraft under 10,000 pounds. It intended to use the renovated hangar as an "apron space" to park larger aircraft, up to 90,000 pounds.
During the renovation of the original hanger, a fire broke out that completely destroyed the hanger and the slab. At the time of the fire, defendant insured plaintiff for losses up to approximately $3.7 million. Because plaintiff was in the process of demolishing the hangar structure, defendant deemed the hangar structure to have zero replacement value, and plaintiff agreed. Defendant acknowledged, however, that it was required to pay to replace the destroyed slab, which plaintiff had intended to keep using, with a "functionally equivalent" new slab. On this point, the parties' insurance contract provides, in relevant part:
"I. Functional Replacement Cost, with respect to Covered Property identified as being subject to Functional Replacement Cost valuation of the Named Participant's current schedule of Covered Property, means that the Trust will pay * * *:
"* * * * *
"(2) In the event of total loss, the cost to replace the damaged property on the same site * * * with property that is functionally equivalent to the damaged property."
(Emphasis added.)
Plaintiff ultimately spent $1,284,288 to replace the slab. Defendant reimbursed plaintiff for $942,719 of that amount. That led plaintiff to file this action for breach of contract. Plaintiff's position was that the replacement slab was "functionally equivalent" to the original slab and that defendant therefore was obligated to pay its full cost. Defendant's position was that the replacement slab was an upgrade, specifically designed for the *786 intended new use of the renovated hangar, and that defendant was only obligated to pay for a "functionally equivalent" replacement slab, which it had already done. The parties disagreed on both the facts and the law. We focus on the latter.
The parties' primary legal disagreement, which the trial court recognized as the "crux" of the matter, was the meaning of "functionally equivalent" in the contract. Before *832 trial, the parties raised that issue with competing proposed jury instructions. Plaintiff summarized the parties' respective positions concisely in its trial memorandum:
"In this case, [plaintiff] expects [defendant] to contend that the phrase 'property that is functionally equivalent to the damaged property' means property that 'has the * * * virtually identical purpose * * * for which the original slab * * * was used.' [See defendant's requested Jury Instruction No. 17.] In other words, [defendant] is contending that 'functionally equivalent' is limited by how the damaged property was actually used before it was damaged, and does not include 'functions' for which the damaged property could have been used. [Plaintiff] contends that the phrase 'property that is functionally equivalent to the damaged property' means property that 'can equally perform the same functions that the damaged property could have performed, had it not been damaged.' In other words, [plaintiff] is contending that 'functionally equivalent' includes 'functions' for which the damaged property could have been used , not just 'functions' for which it was actually used prior to the damage.
"The jury should be instructed that the phrase 'property that is functionally equivalent to the damaged property' means 'property that can equally perform the same functions that the damaged property could have performed, had it not been damaged.' "
(Emphasis added.) In their proposed jury instructions, plaintiff requested the instruction quoted above, while defendant proposed an instruction that "functional equivalent'' means "to have the corresponding or virtually identical purpose or activity for which the original slab existed or was used."
The trial court expressed a preliminary view before trial that "functionally equivalent" is an ambiguous term. On the first day of trial, however, it told the parties that it had decided upon further review that the term is not ambiguous and that it had concluded that defendant's interpretation was the correct one:
"I just wanted to let Counsel know that-and I reread Hoffman [Construction Co. v. Fred S. James & Co ., 313 Or. 464, 836 P.2d 703 (1992) ]. And, I don't find that this is ambiguous. And, in reading the rest of the policy it talks *833 about at the time of the use. So, you'll be limited to-this is now an airport apron, what you're using as an airport apron. But, you can't-it was designed-the policy in effect covers what was in use at the time, not what somebody could intend it to be after the fire and after you use it. So, you have evidence that you are going to present that says this in effect was ten inch-you're going to have evidence that there was rebar that was reinforced, that type of thing. You can present the evidence, but you're not allowed to use this property for what an apron itself had been used for. You can use it as a place that planes were stored on, but not any and all planes.
"I mean, if-it was limited as a hangar space. And, that's all it can be. And functional equivalent means the functional equivalent to that hangar space, not to an apron space."
At trial, the parties put on contrary evidence regarding the characteristics of the original slab, particularly how thick it was (plaintiff's evidence was that it was eight inches or more, while defendant's evidence was that it was six-and-a-half inches on average) and whether it was reinforced with rebar (plaintiff's evidence was that it was, while defendant's evidence was that it was not). Plaintiff's engineer testified that, if the original slab had the characteristics that plaintiff contended, then aircraft weighing "sixty, seventy, eighty thousand pounds would be able to operate on that slab on an occasional basis quite well," with "occasional" meaning "two or three trips a month." Plaintiff also offered evidence that twelve 90,000 pound aircraft used the airport in 2012 to 2013 and that *787 sixteen 90,000 pound aircraft used the airport in 2013 to 2014.
At the conclusion of the parties' presentation of evidence, the trial court gave the jury the following instruction, which it drafted itself:
" 'Functional equivalent' means a hangar floor that is equal in value, virtually identical and corresponding in function to which the original hangar floor existed and was used."
So instructed, the jury reached its verdict. Asked on the verdict form, "Did the defendant breach the contract between Plaintiff and Defendant?" the jury answered, "No." The court *834 entered judgment for defendant. Plaintiff appeals, assigning error to the court's "functional equivalent" instruction.
ANALYSIS
We review the legal correctness of a jury instruction for errors of law. Wallach v. Allstate Ins. Co. , 344 Or. 314, 319, 180 P.3d 19 (2008). We reverse only if there is " 'some' or a 'significant' likelihood that the error influenced the result." Big River Construction, Inc. v. City of Tillamook , 281 Or. App. 787, 807, 386 P.3d 19 (2016), modified on recons. , 283 Or. App. 668, 391 P.3d 996 (2017). Here, the trial court instructed the jury that "functional equivalent," as used in the insurance contract, means a hangar floor that is "equal in value, virtually identical and corresponding in function to which the original hangar floor existed and was used." In its first assignment of error, plaintiff challenges the correctness of the "corresponding in function to which the original hangar floor existed and was used" portion of the instruction. In its second assignment of error, plaintiff challenges the correctness of the "equal in value" and "virtually identical" portions of the instruction. Because both assignments challenge the same instruction, we address them together, as defendant does.[2]
The parties agree that the correct interpretation of the contractual term "functionally equivalent" is a question of law to be resolved through the three-step process articulated in Hoffman Construction Co. v. Fred S. James & Co ., 313 Or. 464, 469, 836 P.2d 703 (1992). First, "we examine the terms and conditions of the policy," relying on policy definitions and, when a particular term is undefined, "plain meaning." Dewsnup v. Farmers Ins. Co. , 349 Or. 33, 40, 239 P.3d 493 (2010). Second, if a disputed term has no plain meaning and is therefore ambiguous, we examine the term within the context of the policy as a whole to determine its *835 meaning. Id . Third, if "two or more plausible interpretations still remain, we construe the term against the drafter and in favor of the insured." Id .
We begin at the first step of the Hoffman analysis.[3] The term "functionally equivalent" is not defined in the contract so we look to the plain meaning of those words. Consulting dictionaries of common usage is one manner in which we determine plain meaning. E.g. , Employers Insurance of Wausau v. Tektronix, Inc. , 211 Or. App. 485, 516, 156 P.3d 105, rev. den. , 343 Or. 363, 169 P.3d 1268 (2007) ; State v. Newman , 353 Or. 632, 641, 302 P.3d 435 (2013). A common definition of "functionally" is "as regards function." Webster's Third New Int'l Dictionary 921 (unabridged ed. 2002). "Function" has several possible meanings. Id . at 920. As used in this contract, the most relevant is "the action for which a person or thing is specially fitted, used, or responsible or for which a thing exists : the activity appropriate to the nature or position of a person or thing." Id . (boldface in original). As for "equivalent," it has multiple common definitions, including several that are potentially relevant here:
"1 : equal in force or amount < the misery of such a position is equivalent to its happiness *788 > < a new TV film series that has the equivalent footage of 13 feature pictures> * * * 3 a : equal in value: COMPENSATIVE, CONVERTIBLE < a person who consumes goods or accepts services with-out producing equivalent goods or performing equivalent services in return inflicts * * * injury-G.B.Shaw> < a sum equivalent to $250 in our currency> < a vitamin pill equivalent to four oranges> < the decimal 0.75 is equivalent to the fraction 3/4> b : corresponding or virtually identical esp. in effect or function < a bureau of the French army equivalent to the intelligence division of the American general staff> * * *."
Id . at 769 (boldface in original); see also id . (defining the noun "equivalent" as "one that is equivalent (as in value, meaning, or effect)" and providing the usage examples "a price that was the equivalent of 10-years rent," "two years of high-school Latin or the equivalent," "a word with no *836 equivalent in the English language," and "the prose equivalent of a poem.").
Given common definitions of the component words, we conclude that the term "functionally equivalent" is susceptible to more than one plausible interpretation. In other words, it is ambiguous. Adair Homes, Inc. v. Dunn Carney , 262 Or. App. 273, 277, 325 P.3d 49, rev. den. , 355 Or. 879, 333 P.3d 333 (2014) (a contract term is ambiguous if it is "susceptible to more than one plausible interpretation"). As used in the parties' contract, the term "functionally equivalent" could mean, as defendant argued and the trial court concluded, corresponding or virtually identical in the functions for which the original hangar floor was actually "used" before the fire. See Webster's at 920 (defining "function" as including "the action for which a * * * thing is * * * used"). On the other hand, it could mean, as plaintiff contends, corresponding or virtually identical in the functions for which the original hangar floor was designed or appropriate, even if it had not actually been used for all of those functions in the past. See id . (defining "function" as including "the action for which a * * * thing is specially fitted," or "the activity appropriate to the nature * * * of a * * * thing").[4]
That takes us to the second step of Hoffman : examining the term "functionally equivalent" within the context of the insurance contract as a whole to try to resolve the ambiguity and determine its meaning. Defendant has not identified any provisions in the lengthy contract as providing relevant context for the disputed term. Notably, the court commented on the first day of trial that, "in reading the rest of the policy, it talks about at the time of the use." However, it is unclear to what the court was referring. Plaintiff represents that there are no references to "at the time of the use" anywhere in the contract, and defendant does not dispute that point. Ultimately, no one has identified, and we *837 have not found, anything in the contract that sheds contextual light on the meaning of the disputed term. Accordingly, we conclude that context does not resolve the ambiguity.
We therefore reach the final step of Hoffman , which is to "construe the term against the drafter and in favor of the insured." Dewsnup , 349 Or. at 40, 239 P.3d 493. Here, that means interpreting the contract in accordance with plaintiff's interpretation rather than defendant's. It follows that the trial court erred when it instructed the jury that " '[f]unctional equivalent' means a hangar floor that is equal in value, virtually identical and corresponding in function to which the original hangar floor existed and was used ." (Emphasis added.) The instruction improperly limited the jury to considering only functions for which the original hangar floor was actually used in the past.
Adding that the replacement floor had to be "equal in value" and "virtually identical" did not ameliorate that error. "Equal in value" and "corresponding or virtually identical" are common definitions of "equivalent," Web ster's *789 at 769 (adjective definitions 3a and 3b), so the jury likely understood "equal in value, virtually identical and corresponding" as three related phrases all tied directly to the "function" described at the end of the sentence. So understood, the instruction was wrong in all three regards. Alternatively, the jury could have understood the instruction to state three separate requirements-that the replacement slab be equal in value to the original slab and virtually identical to the original slab and corresponding in function to which the original hangar floor existed and was used-but that would also be incorrect because the list is conjunctive.[5]
Having concluded that the instruction given was legally incorrect, "the question remains whether that error requires reversal." Sherertz v. Brownstein Rask , 288 Or. App. 719, 727, 407 P.3d 914 (2017). We may reverse only errors "substantially affecting" a party's rights. ORS 19.415(2).
*838 "The question for us is 'whether-in an important or essential manner-the error had a detrimental influence on a party's rights.' " Sherertz , 288 Or. App. at 727, 407 P.3d 914 (quoting Purdy v. Deere & Company , 355 Or. 204, 226, 324 P.3d 455 (2014) ). "In the context of instructional error, that standard will generally be met if, when the instructions are considered as a whole in light of the evidence and the parties' theory of the case at trial, there is some likelihood that the jury reached a legally erroneous result." Id. at 727-28, 407 P.3d 914 (internal quotation marks and brackets omitted).
That standard is met here. Plaintiff put on evidence consistent with its interpretation of the contract which, if accepted as credible by the jury, would have allowed the jury to find in plaintiff's favor if properly instructed. One of plaintiff's trial themes was that the federal government constructed the original slab to function as a hanger and apron space for Navy aircraft in the run up to World War II and had overbuilt for those purposes. Plaintiff introduced some evidence that the original slab could have supported occasional usage by much heavier aircraft, akin to the usage of the replacement slab, even if it had not been so used in years or had never actually been so used in the past. Plaintiff's evidence may have been thin, but it was not, as defendant contends, nonexistent. The trial court's erroneous jury instruction regarding the meaning of the term "functionally equivalent" in the parties' contract, which the trial court recognized as a critical issue that went to the crux of the parties' dispute, "had some likelihood of influencing the jury to reach a legally erroneous result." Big River Construction, Inc. , 281 Or. App. at 808, 386 P.3d 19.
Reversed and remanded.

Technically, as described by defendant, defendant is a risk pool created by Oregon statute, plaintiff is a member district that participates in the risk pool, and the parties' contract is an indemnification agreement that "operates similar to an insurance policy." For purposes of appeal, both parties treat the contract as an insurance policy, and we do the same.

Plaintiff assigns error to the instruction that the trial court actually gave, asserting that it is legally erroneous, but does not assign error to the court's implicit denial of plaintiff's own requested instruction. Accordingly, we review only the instruction actually given. See Estate of Michelle Schwarz v. Philip Morris Inc. , 348 Or. 442, 452, 235 P.3d 668 (2010) (analyzing separately the denial of a proposed instruction and the instruction actually given; concluding that the proposed instruction was incomplete and therefore inaccurate; and concluding that the instruction actually given was erroneous).

Defendant makes certain procedural arguments, regarding preservation and regarding plaintiff's briefing on prejudice, to the effect that we should not reach the merits. We reject those arguments.

Plaintiff offers a useful analogy to illustrate the difference: "[A]n insured stone bridge built in 1900 may have the capacity to support 20 ton truck traffic. But, the owner may have only used the bridge for passenger cars. If the insured bridge is destroyed, the insurer could use 'functionally equivalent' steel and concrete to replace the stone bridge. But, if the steel and concrete replacement bridge can only support passenger cars, it is not the 'functional equivalent' of the destroyed stone bridge."

Moreover, in this context, "equal in value" could mean equal in monetary value, equal in value to the respective parties, or equal in effect. See Webster's at 769 ("equivalent" adjective definition 3a). "Virtually identical" could mean virtually identical in effect or function, but it also could mean virtually identical in appearance. See id . at 1122-23 (definition of "identical").